United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 19, 2005**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 04-30691

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RICHARD A. O'KEEFE,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana

Before KING, Chief Judge, and BARKSDALE and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

The defendant, Richard O'Keefe ("O'Keefe"), appeals from his jury conviction and sentence

for "seaman's manslaughter," in violation of 18 U.S.C. § 1115.

On appeal, O'Keefe brings the following claims of error:  the district court erred (1) by

rejecting his proposed jury instruction stating that gross negligence or heat of passion is necessary

for a conviction pursuant to 18 U.S.C. § 1115, and (2) in refusing to admit the Coast Guard's

accident report ("the report") without redacting the headings identifying the report's conclusions. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On or about March 13, 2001, O'Keefe, as captain of the MV Amy Ann, a tugboat, was operating the vessel on the Mississippi River when an accident occurred causing it to capsize. As a result, Gale Imboden, O'Keefe's ex-wife, drowned. Imboden was not authorized to be aboard the tugboat, despite O'Keefe's invitation to her. Within hours of the accident, O'Keefe was ordered by his supervisors to take a drug test, which ultimately revealed that O'Keefe had cocaine in his system at the time of the accident.

The Government indicted O'Keefe on one count of misconduct or negligence by a ship officer, pursuant to 18 U.S.C. § 1115, for causing the death of Imboden. In a superceding indictment, O'Keefe was additionally charged with obstruction of justice in violation of 18 U.S.C. § 1512(b)(1), for allegedly attempting to persuade or corrupt a witness in the underlying prosecution. Prior to trial, the district court issued to the parties a copy of its proposed jury instructions and inquired whether they wanted to make any objections. No objections were made and the district court instructed the parties that they could still make objections at the close of the trial. The case proceeded to trial in March of 2004.

During the trial, evidence showed that O'Keefe admitted to using cocaine three to four days before the accident. He testified, however, that he was not under the influence of drugs at the time of the accident. The Government's expert witness and O'Keefe's own expert witness contradicted O'Keefe's admission. They testified that, because of the amount of cocaine in O'Keefe's system on the day of the drug test, it was virtually impossible for him to have ingested the cocaine prior to the

2

day of the accident. In short, their testimony suggested that O'Keefe had instead ingested the cocaine on the day of the accident and was, therefore, under the influence of drugs at the time of the accident.

O'Keefe sought to introduce into evidence the Coast Guard casualty investigation report compiled by Lieutenant Michael C. Long. However, O'Keefe requested admission of the report only if admitted in its entirety. The Government initially objected to admission of the report on the grounds that the headings in the report were unreliable and might confuse the jury. The Government then agreed to withdraw its objection if the headings were deleted from the report. The district court found that the headings in the report identified Lieutenant Long's conclusions about what caused the tugboat to sink. The district court determined that the conclusory language in the headings would confuse the jury about the correct burden of proof required to convict O'Keefe and ruled that it would only allow into evidence a redacted version of the document which omitted the headings at issue. Thus, the district court denied O'Keefe's request to introduce the report in its entirety.

Prior to the jury's deliberations, O'Keefe requested that the district court instruct the jury that in order to convict him of a violation of § 1115, the Government needed to prove either "gross negligence," or "heat of passion." The district court rejected O'Keefe's proposed jury instruction, implemented its own instruction, then again asked the parties whether there were any objections to the instruction. O'Keefe's counsel responded: "None, Your Honor." O'Keefe was subsequently convicted on the negligence charge, but he was found not guilty on the obstruction charge. O'Keefe was sentenced to 12 months imprisonment and 3 years of supervised release.

O'Keefe appeals, challenging as reversible error the district court's ruling on the jury charge and on admissibility of the headings in the Coast Guard report. We affirm.

**DISCUSSION**

A.  Refusal To Give Requested Jury Charge

O'Keefe contends that the district court erred by refusing to instruct the jury that in order to convict on a charge of seaman's manslaughter pursuant to § 1115, the Government had to prove gross negligence or heat of passion, as is required for a conviction of common law manslaughter.

We review a district court's refusal to give a requested jury charge for an abuse of discretion. United States v. John, 309 F.3d 298, 304 (5th Cir. 2002). We will reverse a district court's rejection of a proposed jury instruction "only if the requested jury instruction (1) was a substantially correct statement of law, (2) was not substantially covered in the charge as a whole, and (3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the defendant's ability to present a given defense." United States v. Richards, 204 F.3d 177, 204 (5th Cir. 2000). "Where no objection is made or no request for a jury instruction is given, the Fifth Circuit reviews such claims for plain error." See United States v. Bell, 367 F.3d 452, 467 (5th Cir. 2004). See United States v. Daniels, 252 F.3d 411, 414 (5t h Cir. 2001). Because O'Keefe requested a particular jury instruction that was subsequently rejected by the district court, we review this claim for an abuse of discretion.

Section 1115 of Title 18 reads in pertinent part: "Every captain . . . by whose misconduct, negligence, or inattention to his duties on [a] vessel the life of any person is destroyed . . . shall be . . . imprisoned not more than ten years . . . ."

O'Keefe's proposed jury instruction reads in part:

[T]he government must prove that Mr. O'Keefe engaged in "misconduct, negligence or inattention to his duties." That is a term of art. It means "gross negligence," which in turn has two subparts: that the defendant (a) acted with wanton or reckless

4

disregard for human life; and (b) had knowledge that his conduct was a threat to the life of another or knowledge of such circumstances as could reasonably have enabled him to foresee the peril to which his act might subject another.

As noted, the district court rejected this proposed jury instruction, and instead charged the jury, in relevant part, that,

[f]or you to find the Defendant guilty of this crime, you must be convinced that the Government has proved each of the following beyond a reasonable doubt:

. . . .

. . . [I]f a person lost his or her life, the loss of life was proximately caused by the misconduct, negligence or inattention of the Defendant to his duties upon the vessel, upon which he was employed.

The district court then defined the term negligence, stating that "[t]he term 'negligence' is defined as a breach of duty. A breach of a duty is defined as an omission to perform some duty, or it is a violation of some rule or standard of care, which is made to govern and control one in the discharge of some duty."

O'Keefe argues that under the common law definition of manslaughter and the companion statutory definition for general manslaughter, 18 U.S.C. § 1112, the government is required, in the absence of malice, to prove gross negligence or heat of passion to sustain a conviction under § 1115. Citing Neder v. United States, 527 U.S. 1, 23, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), O'Keefe further contends that Congress is presumed to have incorporated common law meanings in the terms it uses in the statutes.

The district court, after conducting a historical analysis of how other courts have applied § 1115, concluded that Congress did not intend that proof of negligence or heat of passion would be required for a conviction under § 1115. The court cited at least five early cases, all strongly

5

suggesting that Congress did not intend a requirement of the heightened *mens rea* that O'Keeke

seeks. See, e.g, United States v. Warner, 28 F.Cas. 404, 407 (D. Ohio, 1848); United States v.

Farnham, 25 F.Cas. 1042, 1044 (S.D. New York, 1853); United States v. Collyer, 25 F.Cas. 554, 578

(S.D.N.Y. 1855); United States v. Keller, 19 F. 633, 638 (D. West Virginia, 1884); and Van Schaick

v. United States, 159 F. 847, 850 (2d Cir. 1908). After conducting its analysis concerning these

cases, the district court stated, "[i]t appears clear from the purpose of the statute, its legislative

history and the available case law interpreting it that any degree of negligence is sufficient to meet

the culpability threshold."[1] O'Keefe's attempt to distinguish the cases relied on by the district court

is to no avail. Indeed, the two cases he relies on, United States v. Festler, 781 F.2d 384, 392-93 (5th

Cir. 1984) and United States v. Browner, 889 F.2d 549, 553 (5th Cir. 1989), are inapposite because

they both track the language of 18 U.S.C. § 1112, for involuntary manslaughter.

This court has consistently held that when the plain meaning of the statute is clear on its face,

courts are required to give effect to the language of the statute according to its terms. See Landreth

Timber Co. v. Landreth, 471 U.S. 681, 685, 105 S.Ct. 2297, 2301, 85 L.Ed.2d 692 (1985); see also

---

[1] We reject O'Keefe's contention that Congress is presumed to have incorporated common law meanings of negligence utilized under § 1112 in the terms used in § 1115, for the same reasons given by the district court:

> The Court does not agree that because the predecessor to § 1115 was called manslaughter that it automatically engrafts the case law interpreting other definitions of manslaughter from other statutes. [Section] 1112 and § 1115 are separate crimes addressing different concerns with different penalties. Involuntary manslaughter as defined in § 1112 applies to *all* persons, regardless of where the offense occurs or whether the offender had any unique responsibility or fiduciary duty towards the victim of the crime. On the other hand, § 1115 applies only to commercial vessels whose operators and owners, historically speaking, "daily have the lives of thousand of helpless humans beings in their keeping."

6

Dial One of Mid-South, Inc. v. BellSouth Telecommunications, Inc., 269 F.3d 523, 525 (5th Cir. 2001).

After evaluating § 1115, we hold that its terms are unambiguous and therefore must be given their plain meaning. As such, we find nothing in the statute's terms suggesting that the words "misconduct, negligence or inattention," were ever meant to imply gross negligence or heat of passion, as argued by O'Keefe. Because we find that the plain language of the statute is clear, we hold that the district court did not abuse its discretion in rejecting O'Keefe's claim.

B. Admission of the Report

Next, O'Keefe contends that the district court erred by refusing to admit an unredacted version of the Coast Guard's report of the accident, i.e., a version which includes headings that state the report's conclusions. O'Keefe requested admission of the report only if the headings were included and his request was denied by the district court's decision to allow the report only if the headings were omitted. O'Keefe argues that the report, in its entirety, should have been allowed into evidence as an exception to the hearsay rule under Rule 803(8)(C) of the Federal Rules of Evidence.

Federal Rule of Evidence 803(8)(C) provides that the following are not excluded as hearsay, even though the declarant is available as a witness:

> Records, report, statements, or data compilations, in any form, of public offices or agencies, setting forth ... in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

According to O'Keefe, Rule 803(8)(C) allows exclusion of these headings only if the material sought to be admitted lacks trustworthiness. He contends that the report was admissible in its entirety as an exception to the hearsay rule under Rule 803(8)(C) because the district court did not conclude that

7

the headings were untrustworthy. O'Keefe argues that the court's basis for ruling that it would only allow into evidence a redacted version is as follows: "(1) the present case was criminal, not civil; (2) the headings might confuse the jury about the burden of proof; and (3) the headings dealt with issues that the jury was charged with deciding." O'Keefe maintains that these reasons do not withstand scrutiny under Rule 803(8)(C) and, therefore, the district court's evidentiary ruling was in error. We disagree.

The policy underlying Rule 803(8)(C) is to exclude investigative reports that are untrustworthy. See Moss v. Ole South Real Estate, 933 F.2d 1300, 1305 (5th Cir. 1991). However, as the Supreme Court has observed, Rule 803(8)(C) is not the only basis upon which a district court may rely to exclude evidence stemming from investigative reports:

> [A] trial judge has the discretion, and indeed the obligation, to exclude an entire report or portions thereof–whether narrow "factual" statements or broader "conclusions"– that she determines to be untrustworthy. *Moreover, safeguards built into other portions of the Federal Rules, such as those dealing with relevance and prejudice, provide the court with additional means of scrutinizing and, where appropriate, excluding evaluative reports or portions of them.* And of course it goes without saying that the admission of a report containing "conclusions" is subject to the ultimate safeguard–the opponent's right to present evidence tending to contradict or diminish the weight of the conclusions.

Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 167-68, 109 S.Ct. 439, 448-449, 102 L.2d.2d 445. (emphasis supplied).

Even were we to assume, *arguendo*, that the instant report could not be excluded as hearsay pursuant to Rule 803(8), other portions of the Federal Rules of Evidence support the district court's ruling which excluded the Cost Guard report's headings. Evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Fed. R. Evid. 403. A district court has discretion "... to limit or forbid the

8

admission of particularly prejudicial evidence even though admissible under an accepted rule of evidence." Almendarez-Torres v. U.S., 523 U.S. 224, 269, 118 S.Ct. 1219, 1243, 140 L.Ed.2d 350, *quoting* Spencer v. Texas, 385 U.S. 554, 561, 87 S.Ct., 648, 652, 17 L.Ed.2d 606 (1967). When a district court's determination as to the admissibility of evidence is questioned on appeal, our applicable standard of review is abuse of discretion. U.S. v. Pace, 10 F.3d 1106, 1115 (5th Cir. 1993); U.S. v. Sprick, 233 F.3d 845 (5th Cir. 2000). Accordingly, we review for abuse of discretion the district court's refusal to admit the unredacted report which contained the headings at issue.

The district court in the instant case stated that it would not allow admission of the headings "primarily because of the concern for confusion to the jury about what standard of care needed to be and what level of proof needed to be."[2] Chief Judge Berrigan stated her reasons as follows:

> I am concerned about [getting confused as to] the burdens of proof. I think the jury is going to get the burden of proof instructions from me. I don't want anything else confusing the jury. It's clear that those three headings deal with what they think caused the ship to sink and whether or not it was the root cause, [or the] proximate cause . . . Those are factors for the jury to find. So, I'm going to go ahead and delete those headings. I note your objection, and that's my ruling.

The conclusions in the excluded headings were made by Lieutenant Michael C. Long, the investigator who compiled the report and who was allegedly not available as a defense witness at the commencement of the trial. The three headings at issue state Lieutenant Long's conclusions about

---

[2] The headings were as follows, and made the following conclusions with regard to the sinking of the Amy Ann: (1) Apparent Cause: "Water flooding into the engine room and other spaces weighed the vessel down, destabilized it, and subsequently caused it to sink"; (2) Root Cause: "Doors left open on the first deck of the tug allowed water to flood into the vessel's spaces"; (3) Contributing Factors: "Strong currents during high water pinned the tug against the barge, thereby prohibiting it from quickly backing down and escaping. In addition, with the tug pinned broadside against the barge, the profile it presented to the strong current disrupted its traverse stability along its athwartship plane, thereby causing the vessel to list to starboard, decreasing its freeboard and allowing water to rush over the gunwales into the wheel spaces." The report also listed O'Keefe's positive test for cocaine use as a contributing factor.

9

the "Apparent Cause", "Root Cause," and "Contributing Factors" of the sinking of the MV Amy Ann. The district court properly noted that it was for the jury, not Lieutenant Long, to determine whether O'Keefe caused Imboden's death. The district court intimated that the headings would ultimately confuse the jury in regard to their duty in determining causation. The district court also expressed concern about allowing into evidence the headings at issue because Lieutenant Long was not available for cross examination. A district court has broad discretion in assessing admissibility under Rule 403, and its determination is reviewed only for abuse of discretion. U.S. v. Morris, 79 F.3d 409, 412 (5th Cir. 1996). On this record, even were we to assume that these conclusory headings were admissible as exceptions to the hearsay rule under Rule 803(8), we find that this evidentiary ruling was appropriate and consistent with the Federal Rules of Evidence. For this reason, we need not reach the question of whether the headings in the instant report fall within the Rule 803(8) exception to the hearsay rule.

The record shows that the district court carefully considered the headings contained in the unredacted version of the Coast Guard report and balanced their probative value against the likelihood that the conclusory statements therein would confuse the jury. Having reviewed the language in the headings and the district court's reasons for excluding this language, we cannot say that exclusion of the headings was an abuse of the district court's broad discretion.

## CONCLUSION

Based on the foregoing, we find no abuse of discretion either in the district court's jury instruction or in the district court's decision to allow only a redacted version of the Coast Guard's report into evidence. O'Keefe's conviction and sentence are, therefore, affirmed.

AFFIRMED.

10