IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 19, 2007**

Charles R. Fulbruge III
Clerk

No. 06-50370
Summary Calendar

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

RUBEN D LEE

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:05-CR-168-3

Before KING, DAVIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Ruben Lee appeals his conviction on drug charges. His conviction is
AFFIRMED.

## I. FACTS AND PROCEEDINGS

Lee was indicted with Eugene Bell and Jessie Brooks in a four-count
indictment alleging charges relating to the possession and distribution of cocaine
base, "crack." Count one alleged that from August 1, 2003 to August 11, 2005,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

Bell, Lee and Brooks conspired to distribute and possess with intent to distribute 50 grams or more of crack cocaine. Count four charged Lee with possessing an unspecified amount of crack cocaine with intent to distribute.

Before trial, Lee moved to suppress crack cocaine seized on April 22, 2005 by Lieutenant Seth Herman of the Midland Police Department. At the suppression hearing, Herman testified that when he and other officers were conducting a search of a residence pursuant to a search warrant, Lee answered the door. Herman entered the residence, ordered Lee to the ground, handcuffed him, and conducted a pat-down, beginning with the left side of Lee's body. Lee was wearing loose-fitting jeans which caused Herman concern because it was easier to hide weapons under loose clothing. When Herman grasped Lee's pants pocket with his whole hand, he detected what he believed to be narcotics. He then reached into the pocket and pulled out an open piece of plastic with crack cocaine. Further searching of the pocket yielded additional rocks of crack cocaine. Herman did not manipulate or move the item in Lee's pocket other than the initial grab. He testified that while conducting pat-downs, he grabbed or grasped something in a pocket to ensure that it was not a weapon. The district court denied the motion to suppress.

At trial, a witness, Lesia Samuels, testified that she began purchasing crack cocaine from Bell for resale in 2003. She had introduced Lee to Bell in April or May of 2005, after Lee asked her if she knew of anybody with some work, by which he meant crack cocaine. Samuels called Bell, after which Lee purchased "a half," meaning a half-ounce of crack cocaine, for $350, which Lee paid to Samuels. Samuels did not witness the delivery.

Co-conspirator Jessie Brooks testified at trial after pleading guilty to conspiring with Lee and Bell to distribute more than 50 grams of cocaine in exchange for the government's agreement not to seek an enhancement for a prior

felony. Brooks testified that he sold crack cocaine to Lee at Bell's instruction, eventually making five or six sales of half-ounce quantities for $300.

Sergeant Russell of the Midland Police Department testified as an expert in narcotics investigations and trafficking. He testified that in drug dealer slang "half" means a half-ounce and that there are approximately 28 grams in an ounce. Typically, a half-ounce sells for between $300 and $400. He also testified, over objection, that at a rate of $300 per ounce, $50,000 would equate to more than 4,600 grams of crack cocaine. Samuels's and Bell's daughter testified that during the summer of 2003, Bell told her to count $50,000 in cash for him.

Over objection, the district court admitted the testimony of an official with the Texas Workforce Commission ("TWC"), which administers the Texas Unemployment Compensation Act. The court also admitted records concerning wage reports for Lee and Bell. Lee's records showed that prior to trial, his last reported earnings were $39 in the second quarter of 2004, and that prior to 2004, his last reported income was $19,000 in 2000 and 2001. The TWC official admitted that not all employment must be reported and that self-employment may be exempt from reporting requirements in some circumstances.

During closing arguments, the prosecutor stated that the $50,000 in cash represented more than 4,600 grams of crack cocaine and pointed to other evidence of drug activity by the co-conspirators. He then said that although 50 grams of crack cocaine had not been seized in the case it was not necessary that each person in the conspiracy distribute 50 grams, as required for a conviction, as long as the overall conspiracy involved that amount. Lee's counsel objected that his client could not be held responsible for acts before he entered the conspiracy, but the court overruled the objection on the basis that all the acts of the conspirators are attributable to each conspirator.

On December 7, 2005, Lee and Bell were convicted on all counts.

Lee challenges the denial of his motion to suppress the evidence found during Herman's pat-down search, the admission of the TWC records, the admission of Russell's testimony equating an amount of cash to an amount of crack, and the government's argument during closing that Lee was responsible for sales prior to his entry into the conspiracy.

## II. DISCUSSION

### A.    Denial of motion to suppress

This court reviews a district court's findings of fact on a motion to suppress for clear error and its legal conclusions de novo. United States v. Smith, 273 F.3d 629, 632 (5th Cir. 2001). "At all times during this analysis, we view the evidence in a light most favorable to the prevailing party . . . ." Id.

During a legitimate investigative stop, a police officer may for his protection, without probable cause, conduct a limited protective search for weapons if "he has reason to believe that he is dealing with an armed and dangerous individual." Terry v. Ohio, 392 U.S. 1, 27 (1968). "If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons . . . ." Minnesota v. Dickerson, 508 U.S. 366, 375 (1993). "The seizure of an item whose identity is already known occasions no further invasion of privacy." Id. at 377. However, once an officer has concluded that there is no weapon present, no further search is justified under Terry. Id. at 378.

Lee asks this court to reverse the district court on two grounds. First, Lee argues that the district court erred in its "factual determinations as to the intrusiveness of the search." Second, Lee claims that the court erred as a matter of law in holding that Herman's initial grasp of Lee's outer clothing during a pat-down search for weapons was lawful under the plain feel doctrine. He argues that the grasp of a pocket is not a pat-down.

There is nothing in the record to suggest the district court clearly erred in its determination that Herman was searching for weapons when he initially grasped Lee's baggy clothing. The district court had the opportunity to see Herman testify and heard about his experience conducting over one thousand pat-down searches in which contraband was discovered. Herman testified that it was easier for suspects to hide weapons in loose-fitting clothing. There is no evidence to suggest that Herman had already determined that Lee had no weapon when he grasped Lee's pocket. Nor is there any evidence to suggest that the grasp of the pocket was greater than required for Herman to determine whether Lee had a weapon. Herman testified that he routinely grasped the outer clothing during pat-down searches in order to ensure the suspect had no weapons.

As to Lee's claim that the district court erred as a matter of law, there is no legal precedent by the Supreme Court, this court, or any other circuit to reverse a district court's factual conclusion that an officer was searching for weapons because "grasping a pocket" is not a pat-down as a matter of law. The district court correctly identified the legal rule that the seizure of contraband whose character is immediately apparent during a search for weapons is lawful. Whether Herman was, in fact, searching for weapons when grasping Lee's pocket is a factual question, not a legal one.

The district court's denial of Lee's motion to suppress is AFFIRMED.

B.   Admission of evidence

This court reviews a district court's decisions regarding the admission of evidence for abuse of discretion. United States v. O'Keefe, 426 F.3d 274, 280 (5th Cir. 2005). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Relevant evidence may be excluded if "its probative value is substantially

outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentations of cumulative evidence." FED. R. EVID. 403.

1.    TWC records

Lee argues the district court abused its discretion in admitting the TWC records because they were irrelevant, unfairly prejudicial, and tended to mislead the jury.  Lee was charged in a conspiracy to distribute drugs.  His lack of employment or source of income tended to make it more probable that he derived income from selling drugs.  Lee cites no authority for his argument that the records are irrelevant if the government does not also show large expenditures of money.  A lack of evidence of extravagant spending is insufficient for this court to conclude that the district court abused its discretion in finding the TWC records were relevant.

Lee claims that the admission of TWC records was unfairly prejudicial because it would force him to take the stand to refute the evidence.  He offers no reason to suggest why witnesses other than Lee were unavailable to testify as to Lee's income to refute the TWC records.  Lee also argues that the TWC records misled the jury into believing the records showed all of his income when there were a "myriad of exemptions and exceptions to TWC wage report [sic]." Lee had the opportunity to challenge this evidence in his cross-examination of a witness from TWC.  There is insufficient basis to conclude that the district court abused its discretion in admitting the TWC records.

2.    Testimony equating cash to crack

Lee argues that Russell's testimony was not based on sufficient facts, nor reliable principles and methods.  He also claims that Russell's testimony that $50,000 in cash would be equivalent to approximately 4,600 grams of crack cocaine was irrelevant and unfairly prejudicial.  Lee argues that the jury would take the testimony to mean that Lee was responsible for 4,600 grams of crack.

6

Russell did not testify that the $50,000 came from crack cocaine sales. He only testified to how much crack cocaine would be represented by $50,000 in cash. He merely performed mathematical calculations based on his knowledge and experience. There is no basis to conclude the district court abused its discretion in admitting Russell's testimony because it was not based on sufficient facts nor reliable principles and methods.

Lee cannot argue the testimony was irrelevant. It was relevant regarding Bell's involvement in the conspiracy. From Bell's daughter's testimony regarding the $50,000, it was clear that the cash had been accumulated before Lee joined the conspiracy. It was also clear from testimony when Lee was alleged to have joined the conspiracy. So, this court cannot conclude that Russell's testimony was unfairly prejudicial against Lee. There is insufficient basis to conclude the district court abused its discretion in admitting Russell's testimony.

## C. Improper prosecutorial remark

When reviewing a claim of an improper prosecutorial remark, this court first asks whether the prosecutor made an improper remark and then asks whether the remark affected the substantive rights of the defendant. United States v. Munoz, 150 F.3d 401, 414–15 (5th Cir. 1998). To determine whether the remark affected substantive rights, this court looks at "(1) the magnitude of the statement's prejudice, (2) the effect of any cautionary instructions given, and (3) the strength of the evidence of the defendant's guilt." Id. at 415 (internal quotation omitted).

The prosecutor made the following statement during closing argument:

Sure, the drugs that were seized in this case were not 50 grams. I told you that in the beginning. But you have seen money and heard testimony of money that is being shipped back and forth, whether it's via Western Union or whether it's the $50,000.00 that Sergeant Russell told you.

If you were getting, as profit, $300.00 for every ounce of crack cocaine that you sold, and you had $50,000.00, that would be the result of you selling over 4600 grams of crack cocaine.

When you go back in there and you look at the Western Union transactions, and you see them for 900, 271, 50, 700, 100, 350, 200, 450, those transactions, which are all from people that have been identified as people selling crack cocaine for Eugene Bell—they all involve multiple grams of crack cocaine.

I mean, the $900.00 from this Vonda in Austin, that would be 3 ounces of crack cocaine or—three times 28—almost 94—or almost 90 grams of crack cocaine.

So the quantity of crack cocaine in this case is far in excess of 50 grams. Far in excess.

I mean, Brooks admitted he has distributed far in excess of 50 grams of crack cocaine. So has Lesia Samuels. They both have admitted it. Three halves on five different occasions for $300.00. That's 2-1/2 ounces of crack cocaine right there.

So the quantity in this case—it is not necessary that every single person distribute 50 grams, just that the overall conspiracy involved it.

Assuming for the purposes of argument that the prosecutor acted improperly when remarking on quantities of crack cocaine sold before Lee joined the conspiracy, possibly implying that it could be attributed to Lee, this court must decide if the remark affected Lee's substantial rights. First, the magnitude of the statement's prejudice, as discussed regarding the admission of Russell's testimony, was minimal. The jury was aware that Lee was not involved in the conspiracy at the time the $50,000 was obtained.

Second, the court gave the jury a multiple conspiracies instruction which Lee acknowledges was designed to protect him from being convicted of an overall conspiracy even if the jury believed he may have been involved in a more limited conspiracy. Lee suggests that the instruction was nonetheless insufficient

because the jury would have been so prejudiced by the possibility that he was involved in a conspiracy that sold over $50,000 worth of crack, and because the court agreed with the prosecutor's statement of the law. The court did agree to a statement of the law that the $50,000 could be attributed to Lee, which would have blunted the effectiveness of the jury instructions. However, the jury instructions would have had some effect in minimizing the damage from the prosecutor's possible implication.

Any possible prejudice from the remark or ineffectiveness of the jury instruction is outweighed by the overwhelming evidence of the quantity of crack cocaine sold by the conspirators after Lee joined the conspiracy. Lee himself purchased over 50 grams of crack cocaine from his co-conspirators. Samuels testified to arranging the sale of a half-ounce of crack cocaine (14 grams) to Lee. Brooks testified to at least five half-ounce sales to Lee, a total of approximately 70 grams. Lee questions Brooks's veracity, but his credibility is confirmed by the fact that he pleaded guilty to conducting those same transactions. Also, Samuels conducted a controlled buy of 13.5 grams of crack cocaine from Brooks as part of the conspiracy on August 11, 2005. Even if the prosecutor's remark implying that the $50,000 associated with Bell was attributable to Lee was in error, there was more than enough evidence that the conspiracy had sold over 50 grams of crack cocaine after Lee's involvement to overcome any possible prejudice.

The prosecutor's remark did not affect the substantive rights of the defendant.

### III. CONCLUSION

Lee's conviction is AFFIRMED.