# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

—————————

m 00-30537

—————————

DIAL ONE OF THE MID-SOUTH, INC.;
HELP SERVICE COMPANY, INC.,
DOING BUSINESS AS DIAL ONE HELP SERVICE COMPANY;
AND
CAMPBELL'S PLUMBING AND HEATING, INC.,
DOING BUSINESS AS DIAL ONE CAMPBELL'S PLUMBING AND HEATING,

Plaintiffs-Appellees-
Cross Appellants,

VERSUS

BELLSOUTH TELECOMMUNICATIONS, INC.;
BELLSOUTH ADVERTISING & PUBLISHING CORPORATION;
AND
L.M. BERRY AND COMPANY,

Defendants-Appellants-
Cross-Appellees.

—————————————

Appeals from the United States District Court
for the Eastern District of Louisiana

—————————————

October 18, 2001

Before JOLLY, SMITH, and WIENER,
    Circuit Judges.

JERRY E. SMITH, Circuit Judge:

In this case brought under the Lanham Act for infringement of the Dial One trademark in New Orleans, judgment was for plaintiffs with an award of actual damages. Defendants challenge the standard used in applying the innocent infringer defense and the award of damages. Plaintiffs cross appeal the decision to exclude evidence of loss of goodwill to the Dial One mark. We find no reversible error and affirm.

## I.

Dial One of the Mid-South, Inc. ("Dial One"), is the franchise holder, and Help Service Company, Inc. ("Help"), and Campbell's Plumbing and Heating, Inc. ("Campbell's"), are franchisees. U.A. Durr was once a Dial One franchisee but lost his franchise in January 1998 when Dial One terminated the relationship. Defendants BellSouth Telecommunications, Inc., BellSouth Advertising & Publishing Corporation, and L.M. Berry and Company are responsible for some part of the production and publication of the Yellow Pages and White Pages for southeastern Louisiana. In the May Yellow and October White pages for 1998, Durr was listed as a Dial One franchisee in the alphabetical section under Dial One, when in fact he had lost his franchise.

Dial One, Help, and Campbell's sued for damages, treble damages, and fees. The district court awarded the following damages: Dial One: $10,000 in lost franchise fees; Campbell's: $45,000 in lost profits; and Help: $100,000 in lost profits. Defendants appeal, challenging the construction of the innocent owner defense and the propriety of the damage awards and the sufficiency of the evidence supporting them. Plaintiffs cross appeal the refusal to consider goodwill damages.

## II.

Defendants' first issue is the proper standard in applying the innocent infringer defense in § 1114(2) of the Lanham Act, which limits persons bringing actions under §§ 1114(1) and 1125(a) to injunctive relief if the defendant is an "innocent infringer." *See* 15 U.S.C. § 1114(2). Specifically, defendants contend the district court erred in refusing to apply an actual-malice standard to defendants' conduct to determine their status as innocent infringers. Instead, the court used a standard of objective reasonableness, under which a defendant is an innocent infringer only if, regardless of state of mind, its conduct is reasonable. The court then rejected defendants' innocent infringer defenseSSfinding not objectively reasonable the conduct of failing to remove the incorrect listing.

Statutory interpretation is a process we review *de novo*. *See Kemp v. G.D. Searl & Co.*, 103 F.3d 405, 407 (5th Cir. 1997). Our starting point in divining the meaning of a statute is the intent of Congress. *See Castillo v. Cameron County*, 238 F.3d 339 (5th Cir. 2001). The best evidence of this intent is the language of the statute. *See Negonsott v. Samuels*, 507 U.S. 99, 104 (1993).

On its face, "innocent infringer" suggests a party who is without blame, but also may connote one who is without knowledge of a wrong or who has no improper motive. The latter interpretation suggests an unremarkable legal scheme whereunder any "infringer" will be held accountable, but an "innocent infringer" will not be subject to as stiff a penalty. Our task is to determine the legal significance

2

of the term "innocent."

On this issue of first impression in this circuit, we conclude that the proper standard for evaluating whether an infringer is innocent is objective reasonableness. First, there is no constitutional mandate to protect this type of speech under the heightened actual malice standard. Second, there is no strong evidence that, in extending the language of § 1114(2) to § 1125(a) of the Lanham Act, Congress intended anything other than correction of a previous oversight in omitting that language from § 1125(a). Third, the premise of conflicting legislative history is based on an artificial conflict between the First Amendment and private enforcement of the Lanham Act. Finally, the logic of the actual malice standard is not appropriate in this context.

Defendants urge us to read "innocent" in § 1114(2) to mean "without constitutional actual malice." They premise this argument on remarks by the co-sponsor of an amendment to the Lanham Act in 1988, expressing a desire for "innocent" to incorporate the "actual malice" standard from *N.Y. Times v. Sullivan*, 376 U.S. 254 (1964). *See* 134 CONG. REC. 31, 851 (1988) (statement of Congressman Kastenmeier).

Defendants' reliance on a statement by a co-sponsor highlights the problems with using legislative history to determine Congressional intent. First, the legislation Congressman Kastenmeier was addressing was merely a bill to extend the innocent infringer defense from one section of the Lanham Act to another; it made no substantive change in the words "innocent infringer."[1] Second, this history ex

presses the intent of only a single member of Congress. The risk in giving conclusive weight to a statement of only one member of Congress is particularly acute here, where the common-sense definition of "innocent" and the requirements of constitutional actual malice are difficult to reconcile.

Finally, Congressman Kastenmeier may have had the mistaken belief that *Sullivan* requires the meaning of "innocent" he advanced in his remarks. He apparently was under the impression that enforcement of the Lanham Act by private parties trying to protect their trademarks may overstep constitutional limitations on the regulation of speech. *See* 134 CONG. REC. 31,850 (1988).

There is no such tension, however, for commercial speech that is false does not receive First Amendment protection.[2] Accordingly, we decline to rely on this shard of legislative history to read a constitutional actual malice standard into § 1114(2).[3]

Moreover, *Sullivan* does not support defendants' position that the actual malice standard

---

[1](...continued)
sec. 132, § 43(a), 102 Stat. 3935, 3946 (1988).

[2] *See Ibanez v. Fla. Dep't of Bus. & Prof'l Regulation*, 512 U.S. 136, 142 (1994); *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 557 (5th Cir. 2001), *cert. denied*, 70 U.S.L.W. 3074 (U.S. Oct. 1, 2001) (No. 01-29).

[3] The official commentary to the bill provided by the Senate Judiciary Committee remarks only that section 32(2) corrects a "typographical error." Senate Comm. on the Judiciary, Trademark Law Revision Act 1988-Satellite Home Viewer Act of 1988, S. Rep. No. 100-515, at 38, *reprinted in* 1988 U.S.C.C.A.N. 5600.

---

[1] *See* Trademark Law Revision Act of 1988,
(continued...)

should apply to the speech at issue. The Supreme Court has not held whether the actual malice standard applies to commercial speech; in a suit by a product manufacturer against the author of a product review, *Bose Corp. v. Consumers Union of the United States, Inc.*, 466 U.S. 485, 515 (1984) it declined to decide whether that standard was appropriate. The Court has held, however, that matters not of public concern are not judged under the actual malice standard. *See Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 760 (1989).

Although the trademark at issue in this case was certainly a matter of public consumption, the improper listing of a service repair business is hardly a matter of public concern such that the improper listing should be protected. In fact, the interest of the public is probably best protected by allowing the suit to proceed without an actual malice defense, so as to promote accuracy in this type of speech. Allowing the suit under a lesser standard will in no way trigger the concerns of *Sullivan*SSthat defamation law will undercut important First Amendment freedoms. Accordingly, we conclude that the district court correctly announced that the proper standard for analyzing the innocent infringer defense under the Lanham Act is objective reasonableness.

Whether defendants in fact were innocent infringers under this test is a question of fact, which we review only for clear error. *See St. Martin v. Mobil Exploration & Producing, Inc.*, 224 F.3d 402, 405 (5th Cir. 2000). Defendants do not contest the error in printing the false listing for Durr, nor do they contest knowledge of the cessation of the Durr-Dial One franchise agreement. Defendants had notice of the change and failed to remove the Dial One reference in the phone books. The

district court's conclusion that this conduct was not objectively reasonable is not clear error.

### III.

Defendants appeal the damages, which are premised on a calculation of lost profits.[4] Our review of the sufficiency of evidence supporting an award of damages is only for clear error.[5] Additionally, § 1117 of the Lanham Act gives the district court broad discretion over the amount of damages. *See* 15 U.S.C. § 1117. The court is limited only by principles of equity and is restricted from making any award that is punitive instead of merely compensatory. *Id*.

There is no indication the court made any award premised on penalizing the defendants instead of compensating the plaintiffs. Although the sufficiency of the evidence supporting the damages is not overwhelming, we defer in large part to the district court's evaluation. The court took account of possible uncertainty in the estimates of future profits, whether evidence was corroborated, whether the harm from the infringing listing would continue beyond the actual period of infringement, and possible variability of profit margins. This demonstrates a weighing of the

---

[4] Defendants appropriately call our attention to this court's recent decision in *Logan v. Burgers Ozark Country Cured Hams, Inc.*, No. 00-30652, 2001 U.S. App. LEXIS 20309 (5th Cir. Sept. 12, 2001). That case, however, is inapposite. It deals with proving Lanham Act damages through defendants' profits, while the instant case concerns damages for plaintiffs' lost profits.

[5] *See* FED. R. CIV. P. 52(a)*; Boston Professional Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 597 F.2d 71, 75-76 (5th Cir. 1979).

factors sufficient to support the award. There is no clear error.

IV.

On cross-appeal, plaintiffs raise the issue of damage to the goodwill of the Dial One trademark. In ruling on a motion *in limine*, the court refused to admit evidence of damage to goodwill. Plaintiffs renewed their objection at trial but did not offer specific proof regarding loss of goodwill. We review rulings on motions *in limine* for abuse of discretion. *See Buford v. Howe*, 10 F.3d 1184, 1188 (5th Cir. 1994).

The court based its decision on two grounds. (1) that, because Dial One of the Mid-South was not the owner of the federal mark, it could not recover goodwill damages; and (2) that there was a strong likelihood the goodwill of the mark had not been harmed, and thus no evidence on the issue was required.

We offer no opinion on the ownership of the mark or the feasibility of recovering goodwill damages where the plaintiff is only the licensee of the mark. Instead, we base our decision to affirm the ruling on the district court's determination that goodwill was not damaged; we see no abuse of discretion in the finding that the goodwill of the Dial One mark did not suffer when a non-franchisee was erroneously listed under the Dial One section of the phone book. It was not unreasonable to find that the improper listing had such a tenuous connection to the goodwill of the Dial One mark that there was no need for full evidentiary treatment.

Our conclusion is reinforced by precedent in this circuit refusing to consider the propriety of a motion *in limine* where no evidence or any suggestion of the possibility of such proof is offered at trial. *See Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 370 (5th Cir. 2000). There is nothing to indicate that plaintiffs offered any evidence of damage to the goodwill of the Dial One mark. Although there was evidence of consumer confusion, this evidence was never tied, at trial, to the claim of loss of goodwill.

AFFIRMED.