# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 22, 2008

Charles R. Fulbruge III
Clerk

No. 06-20807

In Re: RONALD EUGENE REPINE

                                        Debtor

-------------------------------------------------------------------------

PATSY YOUNG

                                        Appellant

v.

RONALD EUGENE REPINE

                                        Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before REAVLEY, SMITH, and GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

This is an appeal in a bankruptcy case. Appellant Patsy Young ("Young") appeals from the District Court order affirming the Bankruptcy Court opinion. The Bankruptcy Court held that Young willfully violated the automatic bankruptcy stay of 11 U.S.C. § 362 and awarded actual and punitive damages along with attorney's fees to the debtor, Appellee Ronald Eugene Repine ("Repine"). We VACATE in part and AFFIRM in part.

I

Young represented Elizabeth Pollard-Repine ("Pollard") in connection with a child support enforcement action against Repine, her former-husband. Liza Greene ("Greene") represented Repine in the child support enforcement action. From January 2000 through June 2003, Repine typically earned between $60,000 and $147,000 for a full year's employment with the high point being $147,000 in 2000 and the low point being $20,000 sometime thereafter because he was unemployed for some part of 2001 through 2003. In June 2003, the family court held Repine in criminal contempt for failure to pay child support and ordered that he be incarcerated for 180 days, ending in December 2003, subject to earlier release for "good time" credit. Additionally, the family court ordered that Repine thereafter be confined for civil contempt day-to-day until he paid child support arrears of $22,859 plus attorneys fees to Young of $2,027. The family court ordered Repine to pay these amounts to Pollard and to Young in separate money judgments.

On the first day of Repine's incarceration, Pollard filed a child support lien against Repine's property. On July 1, 2003, while still incarcerated, Repine filed for bankruptcy under Chapter 13 through his bankruptcy attorney ("Mills"). Mills provided Young with notice of the bankruptcy on or before July 22. Pollard, however, was represented in connection with the bankruptcy by another attorney ("McClure"). Pursuant to 11 U.S.C. § 362(a), Repine's filing of a petition for Chapter 13 bankruptcy protection automatically stayed all actions against him, including Pollard's child support enforcement action. Mills specifically informed Young of the stay and warned her that efforts to collect her attorney's fees from Repine would violate the stay.

The bankruptcy stay notwithstanding, in July and August, Pollard and Repine apparently negotiated options for settling the child support enforcement action and securing Repine's release from jail. One option included Repine

deeding his home to Pollard who would then sell it and credit the proceeds toward his child support arrears. Young, however, resisted out of concern for collecting her attorney's fees, specifically informing Pollard in a letter dated August 8, 2003:

> I am not willing to sign the Agreed and Unopposed Motion for Suspension of Commitment. If you want to enter into such an Order and if I receive the attorney's fees and costs already awarded to me, I will withdraw from the contempt case in the 245th Judicial District Court and you can sign the Order, pro se, that is as your own lawyer.

It is unclear from the record whether Pollard or Young ever signed the motion.

On September 11, the Bankruptcy Court entered an agreed order, lifting the automatic stay "for the purpose of allowing [Pollard] to exercise her state law rights with respect to [the child support enforcement action]" ("Agreed Order"). The Agreed Order also required Repine to deed his home to Pollard. Upon selling the home, the Agreed Order provided that Pollard should extinguish the first lien debt on the home and reimburse herself for all reasonable and necessary repairs to the residence. Thereafter, the Agreed Order provided that Pollard should credit any remaining money to those amounts Repine owed her: first, to all debts and fees relating to the home; and second, to

> all pre-petition and post-petition child support arrears, including all pre-petition interest thereon, and including all attorney's fees due and owing to Patsy Young pursuant to the child support lien filed on June 30, 2003, in the amount of $2,026.75 plus all remaining attorney's fees due and owing to her, . . . , all of which attorneys' fees are deemed additional child support.

To the extent that the proceeds from the sale of the home were insufficient to cover child support, the Agreed Order provided that "those remaining amounts, including reasonable attorneys' fees due and owing to Patsy Young . . . , shall be provided for as Priority Unsecured Claims in [Repine's] Chapter 13 Plan."

On September 12, 2003, in light of the Bankruptcy Court's entry of the Agreed Order, the family court held a hearing on Repine's motion for suspension of commitment. At the hearing,[1] Young opposed Repine's release because she was concerned that her fees would not be paid despite the wishes of her client, Pollard, that Repine be released.[2] Pollard confirmed that she wanted Repine to be released in September 2003.[3] The family court denied Repine's motion for

---

[1] During the trial on Repine's action against Young, the Bankruptcy Court heard testimony concerning the family court proceedings rather than relying on transcripts.

[2] Young testified:

> Q: Do you remember commenting on whether Ms. Pollard Repine wanted Mr. Repine to be released at the hearing?
> A: I called Ms. Pollard Repine as a witness, and she did state to the Judge that she would like to see Mr. Repine released.
> Q: And did you represent her at that hearing?
> A: Yes, I did.
> Q: And did you oppose his release?
> A: I opposed his release because he had not signed the deed . . .

McClure testified:

> Q: And what position did Young take with the Court, with the Family Court, with respect to the Motion for Suspension of Commitment?
> ***
> A: She was opposed to the release.
> Q: Did she tell you why?
> A: She believed that this agreed order lifting stay did not take care of her attorney's fees properly.
> ***
> Q: Did you tell Ms. Young that Ms. Pollard Repine wanted Mr. Repine out of jail?
> A: Prior to the actual hearing, but in the courtroom, Liza Greene and I both told her that.
> Q: And what was her response?
> A: Her response was that she did not care what her client wanted. She wanted a cashier's check. And she would not let him out if we didn't have the cashier's check there that day for her legal fees.

[3] Pollard testified:

> Q: Did you tell Ms. Young that [you wanted Repine released from jail]?
> A: Yes, I just said I wanted him out to go home.

suspension, however, because he still had not paid child support, and Repine remained in jail.

Two things occurred on September 23: Repine's period of criminal incarceration ended in light of his earning a "good time" credit leaving only his day-to-day incarceration for civil contempt until he paid child support and fees; and Repine's father passed away. In a fax to McClure that same day, Young threatened that she would not "appear in court to submit" an agreed order releasing Repine from jail (despite Pollard's wishes), until she received "a copy of the certified checks" for her attorney's fees, noting that Mills and Greene "can disgorge some of the money they received if necessary." On September 24, Repine and Pollard jointly moved to enforce the Agreed Order in the Bankruptcy Court and for Repine's immediate release from jail to attend his father's funeral. Greene, Mills, and McClure appeared, explained their clients' wishes that Repine be released, and further explained that Young would not agree to Repine's release until she was paid attorney's fees. The Bankruptcy Court ordered Young to appear the next day and show cause why she should not be held in contempt for attempting to collect her attorney's fees in violation of the automatic stay.

Despite being personally served with the order to appear and show cause, Young failed to appear before the Bankruptcy Court, and a warrant was issued for her arrest. The U.S. Marshal's Service took Young into custody. The Bankruptcy Court ordered that Young be released following a hearing in which it admonished Young to cease her efforts to collect attorney's fees from the bankruptcy estate. Nevertheless, Young continued her efforts to collect her pre-

---

Q: What'd she tell you?
A: . . . she faxed back saying that if she certified checks, or cashier's check for her monies, that we would go back to Court, or something like that -- along those lines.
Q: She still wanted to get paid?
A: Yes.

petition debt from the bankruptcy estate and continued to refuse to consent to Repine's release from jail to attend his father's funeral.

In October, Young moved to withdraw as Pollard's counsel. The family court substituted McClure as counsel, and shortly thereafter finally entered an agreement between the parties that secured Repine's release. Per the Agreed Order, Repine executed the deed on his home to Pollard on October 10. McClure held the deed until November 6, when Repine finally was released from jail.

In January 2004, Repine filed a complaint against Young in the Bankruptcy Court pursuant to 11 U.S.C. § 362(h)[4] seeking damages and attorney's fees, for Young's willful violation of the automatic stay. Following a two-day trial, the Bankruptcy Court ruled in favor of Repine, awarding: $27,280 in actual damages (including $4,400 for emotional distress); $5,000 in punitive damages; and $33,720 in attorney's fees. Young appealed to the District Court, which affirmed the Bankruptcy Court's order. Young now appeals to this Court.

## II

Young raises five arguments on appeal.[5] First, Young contends that the automatic stay did not apply to her actions. Second, Young contends that her actions did not cause any damage to Repine. Third, Young contends that there

---

[4] Section 362(h) was re-codified into section 362(k) per the Bankruptcy Abuse Prevention Consumer Protection Act of 2005, which post-dates Repine's Chapter 13 petition. Accordingly, we will refer to the current section, section 362(k), as did the District Court.

[5] In addition to her five principal arguments, Young complains of certain "evidentiary issues." First, Young contends that "the refusal of the bankruptcy court to review evidence presented in the family court, as well as the findings of the family judge in control of Repine's incarceration was clear error . . . ." Young's opening brief, however, fails to explain what evidence the Bankruptcy Court refused to consider or which findings of the family judge were clear error. Nor does Young cite any authority to support her position. Because of Young's conclusory briefing, we cannot discern the basis or substance of her argument, if indeed she is making one. Therefore, this evidentiary argument is waived due to inadequate briefing. See L & A Contracting Co. v. Southern Concrete Servs, Inc., 17 F.3d 106, 113 (5th Cir. 1994). Young's second evidentiary issue, that the Bankruptcy Court should not have relied on a sheriff's department letter to establish the termination date of Repine's criminal confinement, is waived for substantially the same reasons. See id.

is no evidence to support an award of damages. Fourth, Young contends that emotional damages are not actual damages and therefore cannot be recovered. Finally, Young contends that Repine was not entitled to attorney's fees.

We review the Bankruptcy Court's findings of fact for clear error and its conclusions of law de novo, as did the District Court. In re Pratt, 524 F.3d 580, 584 (5th Cir. 2008). We review a Bankruptcy Court's evidentiary rulings under an abuse of discretion standard. In re SGSM Acquisition Co., LLC, 439 F.3d 233, 239 (5th Cir. 2006). We likewise review a Bankruptcy Court's decision to award attorney's fees for abuse of discretion. See Pratt, 524 F.3d at 580.

A

The first issue is whether Young's actions in attempting to collect her attorney's fees fell within the automatic bankruptcy stay. Young contends that the stay did not apply to her actions because: she was seeking payment from funds which were not property of the estate; the Agreed Order lifting the stay allowed her to pursue her attorney's fees; and Repine was serving a criminal contempt sentence to which the stay did not apply.[6] Repine counters that: Young willfully violated the automatic stay; that she did, in fact, seek payment from the property of the estate; and that the Agreed Order lifting the stay did not allow Young to proceed outside its terms to collect her attorney's fees.

The Bankruptcy Code prohibits a claimant, like Young, from attempting to collect pre-petition claims, like her attorney's fees, from a debtor under the protection of the Bankruptcy Court, like Repine:

> [A] petition filed under section 301 . . . of this title . . . operates as a stay, applicable to all entities, of -- (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceedings against a

---

[6] Because we are concerned only with Repine's incarceration for civil contempt, which followed the termination of his incarceration for criminal contempt, we need not address Young's argument that she did not violate the stay because Repine was serving a criminal contempt sentence.

debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1). The Bankruptcy Code creates a private right of action for a debtor, like Repine, to bring an action against a person who willfully violates the automatic stay to the injury of the debtor:

Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(k); see Pettitt v. Baker, 876 F.2d 456, 457 (5th Cir. 1989).

There are three elements for a claim under Section 362(k): (1) Young must have known of the existence of the stay; (2) Young's acts must have been intentional; and (3) Young's acts must have violated the stay. In re Chestnut, 422 F.3d 298, 302 (5th Cir. 2005). There can be no serious debate as to the first two factors. Like the defendant in Chestnut, Young knew of Repine's bankruptcy filing but nevertheless intentionally continued with her efforts to collect her attorney's fees. See id.

As to the third factor, Young contends that her acts did not violate the stay for two reasons: first, because she only attempted to collect fees from property outside the bankruptcy estate; and second, because the Agreed Order lifting the stay authorized her collection efforts. We disagree. Assuming, without deciding, that attempts to collect fees from property outside the estate would not violate the stay, we see nothing in the record establishing that Young's collection efforts were restricted solely to non-estate property. Accordingly, her first reason fails. With respect to Young's second reason, it is clear that the Agreed Order lifted the stay to allow only those collection actions specifically authorized by the Agreed Order's terms. Young's actions, however, clearly went beyond its terms.

The Agreed Order lifted the stay to allow Pollard's child support enforcement action to proceed only to the extent that monies sought therein could be recovered through Repine deeding his home to Pollard and then  Pollard selling the home and crediting the proceeds to child support arrears and Young's fees. The Agreed Order thus provided one specific means by which Young could recover her fees outside of the bankruptcy) ) from the sale of the home if any sale proceeds remained after Pollard satisfied certain higher-priority obligations that were enumerated in the Agreed Order.  The Agreed Order did not authorize Young to pursue her own collection campaign.   Indeed, the Agreed Order specifically provided that if the sales proceeds were insufficient to cover Young's fees, then they "shall be provided for as Priority Unsecured Claims in [Repine's] Chapter 13 Plan."  Therefore, under the terms of the Agreed Order, Young's only option was to wait and see if she could collect from the proceeds of the sale of the home.  If nothing remained from which to pay her fees, Young's only option was to proceed under the Chapter 13 plan.   Young's collection activities were contrary to the plain terms of the Agreed Order.  Accordingly, we agree with the lower courts that Young willfully violated the automatic stay.  See id.

## B

The second issue is whether there was a causal connection between Young's actions which violated the stay and the damages suffered by Repine. Young contends that her actions did not cause Repine's injury because she neither caused nor lengthened his incarceration.[7] Repine counters that Young's refusal to consent to his release, contrary to her client's wishes, delayed his release from jail.

We cannot say that the Bankruptcy Court clearly erred in finding that Repine completed his sentence for criminal contempt on September 23, 2003, the

---

[7]  Young cites no authority in support of this contention.

day his father passed away. See Pratt, 524 F.3d at 580 (holding that standard of review for findings of fact is clear error). Therefore, Repine was eligible for release from jail on or after September 23, once his day-to-day incarceration for civil contempt terminated. With the Agreed Order in place since September 11, securing Repine's payment of child support arrears and fees, Repine and Young jointly moved for Repine's immediate release from jail to attend his father's funeral. Notwithstanding entry of the Agreed Order and despite her client's wishes, Young, however, refused to appear to submit an agreed order releasing Repine and continued to frustrate joint efforts to release him thereafter. Although we cannot be certain that the court would have entered the agreed release order had Young appeared and consented to it, it is clear from the record before us that Young frustrated the otherwise concerted efforts of the parties and their lawyers to secure Repine's release. Accordingly, we find no clear error in the Bankruptcy Court's determination that Young's actions extended Repine's period of incarceration and prevented him from attending his father's funeral. See Skipper v. United States, 1 F.3d 349, 352 (5th Cir. 1993) (observing that "causation is an issue of fact" that is reviewed for clear error).

C

The third issue is whether there was evidence supporting a damage award. Young contends that there was no such evidence because Repine offered no evidence of lost wages due to his incarceration. Young also contends that there was no evidence of maliciousness or bad faith, which, according to Young, was required to support the punitive damage award against her. Repine does not directly counter Young's contentions with respect to this issue.

We find no clear error in the Bankruptcy Court's award of lost wages. See Dial One of the Mid-South, Inc. v. BellSouth Telecomm., Inc., 269 F.3d 523, 527 (5th Cir. 2001) (affirming damage award under deferential clear error standard). Although the evidence is not overwhelming, Repine testified that he earned up

to $147,000 for a full year of employment. The Bankruptcy Court's award is consistent with that amount. See id. Cross-examination of Repine cast some doubt upon his annual wages based upon his periods of unemployment, but cross-examination did not establish Repine's average annual wages in recent years, his most recent annual wages, or any other facts that suggest another figure or refute the Bankruptcy Court's determination. Accordingly, we cannot find that the Bankruptcy Court clearly erred in awarding damages consistent with Repine's highest annual salary in recent years. See id.

Section 362(k) allows punitive damages "in appropriate circumstances." We never have defined "appropriate circumstances" in this Circuit. The Eighth Circuit has interpreted "appropriate circumstances" as requiring "egregious, intentional misconduct on the violator's part." In re Knaus, 889 F.2d 773, 776 (8th Cir. 1989). And a District Court within our Circuit has endorsed an "egregious conduct" standard. See In re Lile, 161 B.R. 788, 792 (S.D. Tex. 1993). We agree that an egregious conduct standard is appropriate. Here, we find Young's violation of the bankruptcy stay to be no less "reckless" or "arrogant" than was the violator's in Lile, which justified a punitive damage award. See id.[8] Young ignored Mills's warnings that efforts to collect her fees would violate the automatic stay, ignored Pollard's wishes that Repine be released from jail, failed to appear before the Bankruptcy Court despite being ordered to do so, and persisted in her efforts to collect her fees despite the Bankruptcy Court's admonishment that she cease all collection efforts. This conduct was egregious. Accordingly, we find no clear error in the Bankruptcy Court's punitive damage award. See id.

D

---

[8] The defendant in Lile seized certain property of the estate notwithstanding its knowledge of the bankruptcy.

The fourth issue is whether the Bankruptcy Court's award of damages for Repine's emotional injuries was proper. Young contends that an emotional injury award was improper absent proof of some physical manifestation of emotional distress, which, according to Young, Repine failed to provide. Repine counters that an emotional injury award is a proper component of actual damages. According to Repine, such an emotional injury award need not be accompanied by some physical manifestation of that injury.

We never have decided whether, or under what circumstances, a bankruptcy court may award emotional injury damages under section 362(k). Nor have any of the District Courts in our Circuit squarely decided this issue. Two of our sisters circuits have, however, addressed the issue. The First Circuit has held that emotional damages qualify as "actual damages" under section 362(k). See Fleet Mortg. Group, Inc. v. Kaneb, 196 F.3d 265, 269 (1st Cir. 1999). The Court went on to hold that emotional damage awards under section 362(k) must be supported by "specific information" rather than "generalized assertions" and ultimately upheld the Bankruptcy Court's award because the plaintiff testified about specific changes in his life caused by his emotional distress, including sleeping problems, eating problems, and social anxiety. See id. at 270. The Seventh Circuit implicitly endorsed Fleet Mortg.'s specificity requirement but went further, holding that emotional injury is not compensable under section 362(k) unless the emotional injury can be linked to some other financial injury. See Aiello v. Providian Fin. Corp., 239 F.3d 876, 880 (7th Cir. 2001). In so doing, the Court observed that "the law has always been wary of claims of emotional distress" and that the Bankruptcy Courts are ill-suited to assess such claims. See id. at 879-80. We share the Seventh Circuit's caution in affirming emotional damage awards because emotional damages are easier to manufacture than other types of damages. See id.

We agree that, at minimum, Repine was required to set forth "specific information" concerning the damages caused by his emotional distress rather than relying only on "generalized assertions." See Fleet Mortg., 196 F.3d at 269. However, we need not adopt a precise standard for whether, or under what circumstances, a court may award emotional damages under section 362(k) because we find that Repine has not made this minimal showing.[9] With respect to his alleged emotional damages, Repine testified that he felt "very upset" at what his sons would think of him for being in jail. He also testified that it was "very traumatic" for him to miss his father's funeral, that he still had dreams about it, that it came to mind when he interacted with people in the community who knew he missed the funeral, and that he may never get over it. We do not doubt Repine's testimony, but these generalized assertions are insufficient to support an emotional damages award under section 362(k). See Fleet Mortg., 196 F.3d at 269. And the fact that Repine's emotional injury was accompanied by financial loss cannot cure this deficiency. See Aiello, 239 F.3d at 880. Accordingly, we vacate the Bankruptcy Court's emotional damages award.

E

The final issue is whether the Bankruptcy Court's award of attorney's fees to Repine was proper. Young does not contend that the amount of attorney's fees was unreasonable. She contends only that "it appears" the fee award itself was erroneous because it awarded fees for Repine's prosecution of the section 362(k) action, whereas a fee award under section 362(k) may include only fees that are a component of actual damages and thus separate from the fees associated with the section 362(k) action itself. In addition, Young contends that the fee award was improper because there is no evidence that Repine actually paid his own

---

[9] We acknowledge Young's argument that in some cases we have required a physical manifestation of emotional injury before affirming a damage award. However, we reach no conclusion as to whether such a physical manifestation is required under section 362(k).

13

fees. Repine counters that the text of section 362(k) plainly provides for an award of attorney's fees to an individual, like himself, who was injured as a result of a willful violation of the automatic stay. According to Repine, the statute bears no further qualification.

We have yet to consider a challenge to the propriety of a fee award under section 362(k). The lower courts in our Circuit have concluded that it is proper to award attorney's fees that were incurred prosecuting a section 362(k) claim. See Mitchell v. BankIllinois, 316 B.R. 891, 901-04 (S.D. Tex. 2004); see also In re Still, 117 B.R. 251, 254-55 (Bankr. E.D. Tex. 1990) (holding that debtor could collect attorney's fees incurred in prosecuting a stay violation so long as there were actual damages). We adopt the same reading of section 362(k) and therefore agree. Accordingly, we reject Young's claims that the statute does not provide for a successful claimant to collect the fees incurred in prosecuting their action. We likewise find no qualification in the statute or our precedents that requires a prevailing party to prove that fees actually have been paid before they can be awarded. Accordingly, we hold that the Bankruptcy Court did not abuse its discretion in awarding fees to Repine as a successful section 362(k) plaintiff.

### III

For the foregoing reasons, we VACATE the award of emotional injury damages and AFFIRM the District Court order AFFIRMING the Bankruptcy Court opinion in all other respects.