**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| IN RE IRENE MICHELLE SCHWARTZ-TALLARD, *Debtor*, | No. 12-60052 BAP No. 11-1429 |
| AMERICA'S SERVICING COMPANY, *Appellant*, v. IRENE MICHELLE SCHWARTZ-TALLARD, *Appellee*. | OPINION |

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Kirscher, Pappas, and Dunn, Bankruptcy Judges, Presiding

Argued and Submitted En Banc
June 17, 2015—San Francisco, California

Filed October 14, 2015

Before: Sidney R. Thomas, Chief Judge, and Stephen
Reinhardt, Diarmuid F. O'Scannlain, M. Margaret
McKeown, William A. Fletcher, Richard C. Tallman,
Carlos T. Bea, Milan D. Smith, Jr., Sandra S. Ikuta, Paul J.
Watford, and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Watford;
Concurrence by Judge Bea;
Dissent by Judge Ikuta

## SUMMARY[*]

### Bankruptcy

Affirming the judgment of the Bankruptcy Appellate Panel, the en banc court held that 11 U.S.C. § 362(k) authorizes an award of attorney's fees reasonably incurred in a debtor's prosecution of a suit for damages to provide redress for a violation of the automatic bankruptcy stay.

When a debtor files for bankruptcy, the Bankruptcy Code imposes an automatic stay on actions against the debtor to collect pre-petition debts. *Sternberg v. Johnston*, 595 F.3d 937 (9th Cir. 2010), held that § 362(k) allowed a debtor to recover only those fees incurred to end the stay violation itself, not the fees incurred to prosecute a damages action. Agreeing with other circuits, the en banc court held that § 362(k) authorizes recovery of the fees incurred to prosecute a damages action. The en banc court overruled *Sternberg* to the extent it was inconsistent with the en banc court's opinion.

Concurring in the judgment, Judge Bea, joined by Judge O'Scannlain, concurred in the majority's conclusion that § 362(k) has an unambiguous meaning allowing recovery of

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

attorney's fees incurred in prosecuting a damages action. Judge Bea wrote that the majority's discussion of Congress's plan in enacting the automatic-stay provision was unnecessary.

Dissenting, Judge Ikuta wrote that the statutory text was ambiguous, and the en banc court should have adhered to the better reading set forth in *Sternsberg*.

## COUNSEL

Andrew Jacobs (argued), Snell & Wilmer, Tucson, Arizona; Kelly H. Dove, Snell & Wilmer, Las Vegas, Nevada, for Appellant.

Christopher P. Burke (argued), Law Office of Christopher P. Burke, Las Vegas, Nevada, for Appellee.

Daniel L. Geyser (argued), McKool Smith, Dallas, Texas; Tara Twomey, National Association of Consumer Bankruptcy Attorneys, San Jose, California, for Amicus Curiae National Association of Consumer Bankruptcy Attorneys.

## OPINION

WATFORD, Circuit Judge:

When a debtor files for bankruptcy, the Bankruptcy Code imposes an automatic stay on virtually all actions against the debtor to collect pre-petition debts. 11 U.S.C. § 362(a). To deter violations of the automatic stay and to provide redress

for those that do occur, the Code permits injured debtors to sue for "actual damages, including costs and attorneys' fees." § 362(k). With one exception, courts have uniformly held that this provision authorizes an award of all attorney's fees reasonably incurred to remedy a stay violation, including fees incurred in prosecuting the damages action that § 362(k) authorizes. *See, e.g.*, *In re Repine*, 536 F.3d 512, 522 (5th Cir. 2008); *In re Duby*, 451 B.R. 664, 674–77 (1st Cir. BAP 2011).

The one exception is our decision in *Sternberg v. Johnston*, 595 F.3d 937 (9th Cir. 2010). There, we held that § 362(k) allows a debtor to recover only those fees incurred to end the stay violation itself, not the fees incurred to prosecute a damages action. *Id.* at 947. Thus, under *Sternberg*, once the stay violation has ended, no fees incurred after that point may be recovered. That holding has been the subject of widespread criticism. Having reconsidered the matter, we conclude that *Sternberg* misconstrued the plain meaning of § 362(k). To the extent it is inconsistent with this opinion, *Sternberg* is overruled.

I

This case has a convoluted procedural history, which for our purposes can be briefly summarized. The debtor, Irene Schwartz-Tallard, took out a mortgage on her home in Henderson, Nevada. After filing a Chapter 13 bankruptcy petition, she continued to make her monthly mortgage payments to America's Servicing Company (ASC), the company servicing her loan. Due to a mistake on its part, ASC wrongfully foreclosed on Schwartz-Tallard's home. ASC purchased the home at the foreclosure sale and promptly served Schwartz-Tallard with an eviction notice. Schwartz-

Tallard filed a motion in the bankruptcy court requesting relief under 11 U.S.C. § 362(k). She sought an order requiring ASC to reconvey title to the home as well as an award of actual damages, punitive damages, and attorney's fees. The bankruptcy court found that ASC's actions constituted a willful violation of the automatic stay and ordered ASC to reconvey title to Schwartz-Tallard. The court also awarded Schwartz-Tallard $40,000 in economic and emotional distress damages, $20,000 in punitive damages, and $20,000 in attorney's fees.

None of that relief is now at issue. ASC did not challenge the reconveyance order; soon after the bankruptcy court issued the order, ASC complied with it. While ASC did challenge the damages award by pursuing an appeal in the district court, the district court ultimately upheld the award, and ASC chose not to seek further review in this court.

After successfully defending the damages award on appeal, Schwartz-Tallard returned to the bankruptcy court and asked it to award her, under § 362(k), the roughly $10,000 in additional attorney's fees she had incurred in the district court opposing ASC's appeal. The bankruptcy court denied the motion. The court stated that although it thought Schwartz-Tallard should be entitled to recover her fees on appeal, it could not award them under *Sternberg*. The stay violation ended, the court explained, once ASC reconveyed title to Schwartz-Tallard. Because Schwartz-Tallard incurred all of her fees on appeal after that point, the court held that *Sternberg* barred their recovery.

Schwartz-Tallard appealed, and the Bankruptcy Appellate Panel (BAP) reversed. It concluded that *Sternberg* does not bar an award of attorney's fees to a debtor who successfully

defends a § 362(k) damages award on appeal. *In re Schwartz-Tallard*, 473 B.R. 340, 350 (9th Cir. BAP 2012). A divided three-judge panel of this court affirmed. *In re Schwartz-Tallard*, 765 F.3d 1096 (9th Cir. 2014). The majority concluded that ASC's reconveyance of title did not end the stay violation because, on appeal, ASC continued to challenge the bankruptcy court's determination that the automatic stay had been violated in the first place. *Id.* at 1102. Judge Wallace dissented. In his view, the stay violation ended once ASC reconveyed title to the home and chose not to challenge the validity of the reconveyance order on appeal. Because Schwartz-Tallard incurred all of her attorney's fees on appeal after that point, Judge Wallace concluded that under *Sternberg* those fees could not be awarded. *Id.* at 1106 (Wallace, J., dissenting).

## II

We find it unnecessary to resolve the issue that divided the three-judge panel. Rather than decide whether *Sternberg*'s holding extends to the facts of this case, we think the better course is to jettison *Sternberg*'s erroneous interpretation of § 362(k) altogether.

## A

When Congress enacted the Bankruptcy Code in 1978, it included the automatic stay provision now found in § 362. At the time, the Code did not contain a provision specifically authorizing imposition of sanctions for violations of the automatic stay. Nonetheless, courts treated the automatic stay as akin to a court order and relied on their civil contempt powers to impose compensatory sanctions on creditors who knowingly violated the stay. Those sanctions sometimes

included an award of the attorney's fees the debtor incurred in prosecuting the contempt proceeding. *See, e.g.*, *In re Roman*, 283 B.R. 1, 14 (9th Cir. BAP 2002); *In re Zartun*, 30 B.R. 543, 546 (9th Cir. BAP 1983). Although the "American Rule" usually requires parties to bear their own attorney's fees, a common-law exception to the rule permits fee awards in litigation brought to remedy willful violations of court orders. *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717–18 (1967).

Perhaps to eliminate any doubt about the source of a court's authority to remedy violations of the automatic stay, Congress enacted § 362(h) in 1984. Act of July 10, 1984, Pub. L. No. 98-353, 98 Stat. 333, 352. Congress re-designated the statute § 362(k) in 2005 and added the exception now found in paragraph (2), but its text has otherwise remained unchanged. Act of Apr. 20, 2005, Pub. L. No. 109-8, 119 Stat. 23, 114. It provides in full:

> (1) Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

> (2) If such violation is based on an action taken by an entity in the good faith belief that subsection (h) applies to the debtor, the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages.

11 U.S.C. § 362(k).

In some respects the statute strengthened the remedies previously available to debtors injured by willful stay violations. It makes an award of actual damages and attorney's fees mandatory, and grants bankruptcy courts the discretion to impose punitive damages in appropriate cases.

B

Both parties agree that § 362(k) authorizes an award of attorney's fees incurred in ending a violation of the automatic stay. Those fees can be incurred out of court, as when a debtor retains an attorney to call or write a creditor to demand that it end its stay-violating conduct. When those efforts fail, a debtor can also incur attorney's fees in court by pursuing injunctive relief aimed at ending the stay violation. No one disputes that, given the statute's explicit reference to "costs" as well as "attorneys' fees," at least some fees incurred in litigation are recoverable.

If that much is true, and we agree that it is, the question becomes: Did Congress intend to authorize recovery of attorney's fees incurred in litigation for one purpose (ending the stay violation) but not for another (recovering damages)? We see nothing in the statute that suggests Congress intended to cleave litigation-related fees into two categories, one recoverable by the debtor, the other not. The statute says "including costs and attorneys' fees," with no limitation on the remedy for which the fees were incurred. To uphold *Sternberg*'s interpretation of § 362(k), we would have to read into the statute limiting language—something like, "including costs and attorneys' fees *incurred to end the stay violation*"—that is simply not present.

*Sternberg* concluded that such a limitation should be inferred because the statute makes attorney's fees recoverable only as a component of the debtor's "actual damages," not as attorney's fees as such. Section 362(k) is somewhat unusual in that regard. Most statutes that deviate from the American Rule authorize the award of "a reasonable attorney's fee" to a "prevailing party," usually in the context of the action as a whole rather than a discrete proceeding. *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2164 (2015). Section 362(k) differs from those statutes, but if anything its phrasing signals an intent to permit, not preclude, an award of fees incurred in pursuing a damages recovery. Under the American Rule, a statutory right to recover damages ordinarily "does not include an implicit authorization to award attorney's fees" incurred in bringing the action. *Summit Valley Industries, Inc. v. Carpenters*, 456 U.S. 717, 722 (1982). That rule does not apply, however, "where Congress has made specific and explicit provisions for the allowance of such fees." *Id.* (internal quotation marks omitted). Congress did just that in § 362(k), by stating specifically and explicitly that the debtor "shall recover actual damages, *including costs and attorneys' fees*."

*Sternberg*'s reading of § 362(k) might have made sense if the statute had said that an injured individual "shall recover actual damages," period. That phrasing might well have conveyed Congress' intent to adhere to the default rule precluding an award of attorney's fees incurred in prosecuting the damages action itself. In this case, Congress' contrary intent is evident not only from the explicit language of § 362(k), but also from the historical backdrop against which the statute was enacted. As noted, at the time Congress enacted § 362(k), courts were already awarding debtors the attorney's fees incurred in prosecuting civil contempt

proceedings. Far from seeking to end that practice, Congress appears to have intended to provide statutory authorization for its continuance.

We do not think the language of § 362(k) is ambiguous, but even if it were, we would then be required to decide which of the two competing readings of the statute more closely aligns with Congress' "plan" in enacting the statute. *King v. Burwell*, 135 S. Ct. 2480, 2496 (2015). That strikes us as an easy choice.

We do not have legislative history that speaks directly to Congress' purpose in enacting § 362(k). It seems evident, however, that Congress sought to encourage injured debtors to bring suit to vindicate their statutory right to the automatic stay's protection, one of the most important rights afforded to debtors by the Bankruptcy Code. The automatic stay provides the debtor with a "breathing spell" from the harassing actions of creditors, and it protects the interests of all creditors by preventing "dismemberment" of the debtor's assets before the debtor can formulate a repayment plan or, in liquidation cases, the court can oversee equitable distribution of the debtor's assets. 3 *Collier on Bankruptcy* ¶ 362.03 at 362–23 & n.6 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2015); *see In re Bloom*, 875 F.2d 224, 226 (9th Cir. 1989). By providing robust remedies for debtors who prevail, the statute acts to deter creditors from violating the automatic stay in the first instance.

That legislative plan can be carried out, of course, only if injured debtors are actually able to sue to recover the damages that § 362(k) authorizes. Congress undoubtedly knew that unless debtors could recover the attorney's fees they incurred in prosecuting an action for damages, many

would lack the means or financial incentive (or both) to pursue such actions. After all, the very class of plaintiffs authorized to sue—individual debtors in bankruptcy—by definition will typically not have the resources to hire private counsel. And in many cases the actual damages suffered by the injured debtor will be too small to justify the expense of litigation, even if the debtor can afford to hire counsel. *See* Brief for National Association of Consumer Bankruptcy Attorneys as Amicus Curiae at 22. Thus, Congress could not have expected § 362(k) to serve as an effective deterrent unless it authorized recovery of the attorney's fees incurred in prosecuting an action for damages. In that respect, § 362(k) is no different from the many statutes Congress has enacted "making it possible for persons without means to bring suit to vindicate their rights." *Perdue v. Kenny A.*, 559 U.S. 542, 559 (2010).

Finally, if we needed further reason to reject *Sternberg*'s reading of § 362(k), we could look as well to the difficulties courts have encountered in administering it. When interpreting statutes that authorize an award of attorney's fees, we try to avoid construing them in a way that will "multiply litigation." *Commissioner v. Jean*, 496 U.S. 154, 163 (1990). *Sternberg*'s interpretation of § 362(k) violates that guiding principle. When a debtor sues under § 362(k) both for injunctive relief aimed at ending the stay violation and for damages, and the creditor does not end the violation until after litigation has ensued, *Sternberg* requires the bankruptcy court to sort out how much attorney time was devoted to ending the stay violation (recoverable) as opposed to pursuing damages (not recoverable). *See, e.g.*, *In re Snowden*, 769 F.3d 651, 660 (9th Cir. 2014). In addition, as this case well illustrates, *Sternberg*'s reading of the statute can spawn further litigation over when, exactly, a stay

violation actually came to an end—a matter that can be deceptively tricky to resolve. It is hard to imagine why Congress would have wanted to invite litigation over these highly factbound matters, particularly since doing so would effectively undermine, rather than advance, the statutory aims Congress sought to achieve by enacting § 362(k).

For these reasons, § 362(k) is best read as authorizing an award of attorney's fees incurred in prosecuting an action for damages under the statute. Although § 362(k) makes such fee awards mandatory rather than discretionary, we do not think that feature of the statute will result in unnecessary litigation brought solely to drive up the award. Only an award of fees reasonably incurred is mandated by the statute; courts awarding fees under § 362(k) thus retain the discretion to eliminate unnecessary or plainly excessive fees. *In re Dawson*, 390 F.3d 1139, 1152 (9th Cir. 2004). Sound exercise of this discretion will provide a sufficient check on any abuses that might otherwise arise.

### III

Having determined that § 362(k) authorizes an award of attorney's fees incurred in prosecuting an action for damages, we can quickly dispose of this appeal. When a party is entitled to an award of attorney's fees in the court of first instance, as Schwartz-Tallard was here, she is ordinarily entitled to recover fees incurred in successfully defending the judgment on appeal. *Voice v. Stormans, Inc.*, 757 F.3d 1015, 1016 (9th Cir. 2014). We see no reason why fee awards under § 362(k) should be subject to a different rule. Schwartz-Tallard is therefore entitled to recover the attorney's fees reasonably incurred in opposing ASC's appeal in the district court.

The judgment of the Bankruptcy Appellate Panel is **AFFIRMED.**

---

BEA, Circuit Judge, joined by O'SCANNLAIN, Circuit Judge, concurring in the judgment:

I concur in the majority's conclusion that 11 U.S.C. § 362(k) has an unambiguous meaning which permits Schwartz-Tallard to recover the attorney's fees she incurred in defending against ASC's appeal. Maj. Op. at 3–9. In my view, however, this should be the beginning and end of our analysis. I am troubled that the majority proceeds to speculate about "Congress' plan" in enacting the automatic-stay provision of the Bankruptcy Code in reliance on *King v. Burwell*, 135 S. Ct. 2480 (2015). Maj. Op. at 10–11. Given the majority's acknowledgment that § 362(k) is unambiguous, this discussion strikes me as unnecessary. We should always bear in mind the "cardinal principle of judicial restraint": "if it is not necessary to decide more, it is necessary not to decide more." *PDK Labs., Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment).

"If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.9 (1984). If the language of the statute is unambiguous, that is the end of the inquiry. *See City of Arlington v. FCC*, 133 S. Ct. 1863, 1868 (2013) ("'If the intent of Congress is clear, that is the end of the matter; for the court . . . must give effect to the

unambiguously expressed intent of Congress.'" (quoting *Chevron*, 467 U.S. at 842–43)).

Engaging in gratuitous speculation of what "Congress' plan" must have been when it enacted § 362(k) ignores years of Supreme Court and Ninth Circuit precedent requiring judicial inquiry to cease when a court finds a statute unambiguous.

"If the statutory language is unambiguous, in the absence of a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive." *Reves v. Ernst & Young*, 507 U.S. 170, 177 (1993) (internal quotation marks omitted). "[E]ven the most formidable argument concerning the statute's purposes could not overcome the clarity [of] the statute's text." *Kloeckner v. Solis*, 133 S. Ct. 596, 607 n.4 (2012). "The purposes of a law must be 'collected chiefly from its words,' not 'from extrinsic circumstances.'" *King v. Burwell*, 135 S. Ct. 2480, 2503 (2015) (Scalia, J., dissenting) (quoting *Sturges v. Crowninshield*, 17 U.S. (4 Wheat.) 122, 202 (1819) (Marshall, C.J.)); *see also Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005) ("As we have repeatedly held, the authoritative statement is the statutory text, not the legislative history or any other extrinsic material.").

Here, the majority finds the language of § 362(k) to be unambiguous. Although that should be the end of the inquiry, the majority then looks to the legislative history, which it finds silent as to Congress' purpose in enacting that provision. With the traditional tools of statutory construction now far behind it, the majority proceeds to engage in pure speculation as to Congress' motivations in enacting § 362(k)

of the Bankruptcy Code. Because I believe that our constitutional role is confined to giving effect only to the words that Congress wrote when the statutory text is unambiguous, I respectfully decline to join the majority's unnecessary discussion of "Congress's plan."

IKUTA, Circuit Judge, dissenting:

I prefer the result reached by the majority, which reads 11 U.S.C. § 362(k) as if it were a typical attorneys' fees provision that shifts the fees incurred in bringing the damages action to a prevailing plaintiff. Because courts are familiar with this sort of fee shifting statute, such a reading makes it simpler for bankruptcy courts and district courts to apply § 362(k). But the ordinary tools of statutory interpretation compel me to conclude that this interpretation is not the best reading of the statutory text. Because our job is to do our best to interpret the statute as Congress wrote it, we should adhere to the better reading set forth in *Sternberg v. Johnston*, 595 F.3d 937 (9th Cir. 2010).

"The starting point in discerning congressional intent is the existing statutory text." *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004). The statutory text here states, "[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). As we acknowledged in *Sternberg*, the term "actual damages" is ambiguous. 595 F.3d at 947. It might refer to all of the costs resulting from a violation of the stay, including the fees incurred in bringing the damages action. Maj. Op. at 8–10.

But it is reasonable to interpret "actual damages" as including only the fees incurred in correcting the automatic stay violation, and not the fees incurred in bringing the lawsuit itself, because "actual damages" are "[a]n amount awarded . . . to compensate for a proven injury or loss; damages that repay actual losses." *Id.* (alterations in original) (quoting BLACK'S LAW DICTIONARY 416 (8th ed. 2004)). And "[o]nce the violation has ended, any fees the debtor incurs after that point in pursuit of a damage award would not be to compensate" the debtor for a violation of the stay. *Id.*

As explained in *Sternberg*, a number of states have adopted a similar approach to cases in which attorneys' fees are part of the damages incurred from tortious conduct. *Id.* at 946. In suits to recover attorneys' fees for malpractice, or to obtain the benefits due under an insurance policy, state courts have allowed the plaintiff to recover only the damages the plaintiff actually incurred from the underlying tort, but not the attorneys' fees incurred to bring the action for damages. *Id.* Indeed, the majority acknowledges that the phrase "shall recover actual damages," standing alone, is best read as conveying "Congress' intent to adhere to the default rule precluding an award of attorney's fees incurred in prosecuting the damages action itself." Maj. Op. at 9.

When the language of a statute is ambiguous, canons of statutory interpretation are useful rules of thumb to help courts determine the meaning of legislation. *See Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253 (1992). The most relevant canon here is that "Congress legislates against the backdrop of the 'American Rule.'" *Sternberg*, 595 F.3d at 945–46 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994)). In other words, statutes regarding attorneys' fees should be read with a presumption in favor of the American

Rule, except when a statutory purpose to the contrary is evident. *See Fogerty*, 510 U.S. at 534. This principle supports the conclusion that Congress did not intend to allow the debtor to recover the fees incurred in the action itself. Indeed, as the majority acknowledges, when Congress intends to abrogate the American Rule, it typically uses different language. Maj. Op. at 9. Most statutes that deviate from the American Rule do not provide a cause of action for "actual damages, including costs and attorneys' fees," but instead authorize the award of "a reasonable attorney's fee" to a "prevailing party." Maj. Op. at 9. Thus, Congress knows how to include language abrogating the American Rule, and it chose different language for § 362(k). *See Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2164 (2015) ("Although . . . statutory changes to the American Rule take various forms, they tend to authorize the award of 'a reasonable attorney's fee,' 'fees,' or 'litigation costs,' and usually refer to a 'prevailing party' in the context of an adversarial 'action.'" (citations and internal quotation marks omitted)); *id.* at 2166 ("Had Congress wished to shift the burdens of . . . litigation under [the statute at issue], it easily could have done so. We accordingly refuse to invade the legislature's province by redistributing litigation costs here." (internal quotation marks omitted)).

In reaching the opposite conclusion, the majority does not apply these ordinary principles of statutory construction. Except for making the conclusory statement that the "explicit language of § 362(k)" is unambiguous, Maj. Op. at 9–10, the majority does not analyze the text or apply standard principles of statutory construction at all. Instead, the majority jumps immediately to the statute's historical context, its legislative history, and policy, but none of these sources are particularly helpful here.

No doubt the historical context of a statute can help a court interpret an otherwise ambiguous term. *See D.C. v. Heller*, 554 U.S. 570, 605 (2008) ("[T]he examination of a variety of legal and other sources to determine the public understanding of a legal text in the period after its enactment . . . is a critical tool of . . . interpretation." (emphasis omitted)). As the majority explains, at the time Congress enacted § 362(k), courts relied on their civil contempt powers to impose sanctions on creditors who wilfully violated the automatic stay, and those sanctions sometimes included an award of attorneys' fees the debtor incurred in the contempt proceeding. Maj. Op. at 9–10. Relying on this history, the majority says that Congress "appears to have intended" § 362(k) to eliminate any doubt about the court's authority to remedy violations of the automatic stay, Maj. Op. at 7, 9–10, and perhaps it did. But perhaps not: Rather than codifying the court's civil contempt powers to award attorneys' fees, which Congress is capable of doing, *see, e.g.*, *In re Pace*, 67 F.3d 187, 193 (9th Cir. 1995) (finding that 11 U.S.C. § 105 authorizes bankruptcy courts to award costs and attorneys' fees through civil contempt sanctions), Congress enacted an entirely different scheme, which gives debtors a cause of action to recover damages caused by a stay violation. Unlike civil contempt sanctions, actual damages under § 362(k) are mandatory, and the bankruptcy court has the discretion to award punitive damages. As the majority notes, § 362(k) "strengthened the remedies previously available to debtors injured by willful stay violations" rather than merely codify historical practice. Maj. Op at 8. In other words, Congress decided to enact something entirely different from past practice, so the past practice does not shed light on what Congress meant by the words "actual damages, including costs and attorneys' fees."

Turning to legislative history, the majority acknowledges that there is none, so it proposes some of its own. Maj. Op. at 10–11. It speculates that Congress' purpose must have been to protect debtors: After all, the automatic stay prevents creditors from collecting from a debtor who has declared bankruptcy, and interpreting § 362(k) to include the fees incurred in the damages action provides extra deterrent to prevent creditors from violating the stay. Maj. Op. at 10–11. The majority's interpretation also empowers the debtor to sue to recover the damages, because in some cases the damages will be too small to justify the expense of litigation. Maj. Op. at 10–11. It is possible that Congress had those purposes in mind, but because there is no evidence of those purposes, they do not support the majority's interpretation. *See Baker Botts*, 135 S.Ct. at 2169 ("Whether or not [awarding fees] is desirable as a matter of policy, Congress has not granted us roving authority to allow counsel fees whenever we might deem them warranted. Our job is to follow the text even if doing so will supposedly undercut a basic objective of the statute." (citations and internal quotation marks omitted)). In any event, even without awarding fees incurred in the damages action, the action itself deters creditors from violating the stay, and it is possible that Congress did not want to encourage costly litigation for relatively minor violations or violations that were not clearly willful. While it is true that depriving the debtor of the attorneys' fees incurred in bringing the damages action fails to make the debtor whole, that is the ordinary result of the American Rule.

Finally, the majority turns toward the difficulties that have resulted from *Sternberg*'s reading of § 362(k). Maj. Op. at 11. Here, I am in complete sympathy. The interpretation provided by *Sternberg* is difficult to apply, and has puzzled bankruptcy courts and district courts alike. In addition, the

*Sternberg* interpretation is counterintuitive; courts are used to fee-shifting provisions that shift fees incurred in bringing the damages action, as well as fees incurred as part of the damages.  I am not aware, however, of any canon that guides us to select an interpretation of a statute based on the ease or difficulty of administering it, and the majority does not rely on one.   The majority states only that we try to avoid construing statutes in a way that will "multiply litigation," aj. Op. at 11, but the majority's interpretation might do just that by creating an extra incentive to bring an action under § 362(k).  Thus, the practical effects of interpreting § 362(k) one way or the other also does not evince Congress's intent to abrogate the American Rule.

Although I understand the impulse to improve Congress's legislative efforts, our role is a modest one, and we should simply do our best to give effect to the plain language of the text.  Congress is always free to correct our interpretation. Therefore, I reluctantly dissent.