Justice THOMAS delivered the opinion of the Court.
Section 327(a) of the Bankruptcy Code allows bankruptcy trustees to hire attorneys, accountants, and other professionals to assist them in carrying out their statutory duties. 11 U.S.C. § 327(a). Another provision, § 330(a)(1), states that a bankruptcy court “may award ... reasonable compensation for actual, necessary services rendered by” those professionals. The question before us is whether § 330(a)(1) permits a bankruptcy court to award attorney’s fees for work performed in defending a fee application in court. We hold that it does not and therefore *2163 affirm the judgment of the Court of Appeals.
I
In 2005, respondent ASARCO LLC, a copper mining, smelting, and refining company, found itself in financial trouble. Faced with falling copper prices, debt, cash flow deficiencies, environmental liabilities, and a striking work force, ASARCO filed for Chapter 11 bankruptcy. As in many Chapter 11 bankruptcies, no trustee was appointed and ASARCO — the “ ‘debt- or in possession’ ” — administered the bankruptcy estate as a fiduciary for the estate’s creditors. §§ 1101(1), 1107(a).
Relying on § 327(a) of the Bankruptcy Code, which permits trustees to employ attorneys and other professionals to assist them in their duties, ASARCO obtained the Bankruptcy Court’s permission to hire.two law firms, petitioners Baker Botts L.L.P. and Jordan, Hyden, Womble, Culbreth & Holzer, P.C., to provide legal representation during the bankruptcy.[1] Among other services, the firms prosecuted fraudulent-transfer claims against ASARCO’s parent company and ultimately obtained a judgment against it worth between $7 and $10 billion. This judgment contributed to a successful reorganization in which all of ASARCO’s creditors were paid in full. After over four • years in bankruptcy, ASARCO emerged in 2009 with $1.4 billion in cash, little debt, and resolution of its environmental liabilities.
The law firms sought compensation under § 330(a)(1), which provides that a bankruptcy court “may award ... reasonable compensation for actual, necessary services rendered by” professionals hired under § 327(a). As required by the bankruptcy rules, the two firms filed fee appli.cations. Fed. Rule Bkrtcy. Proc. 2016(a). ASARCO; controlled once again by its parent company, challenged the compensation requested in the applications. After extensive discovery and a 6-day trial on fees, the Bankruptcy Court rejected ASARCO’s objections and awarded the firms approximately $120 million for their work in the bankruptcy proceeding plus a $4.1 million enhancement for exceptional performance. The court also awarded the firms over $5 million for time spent litigating in defense of their fee applications.
ASARCO appealed various aspects of the award to the District Court. As relevant here, the court held that the firms could recover fees for defending their fee application.
The Court of Appeals for the Fifth Circuit reversed. It reasoned that the American Rule — the rule that each side must pay its own attorney’s fees — “applies absent explicit statutory ... authority” to the contrary and that “the Code contains no statutory provision for the recovery of attorney fees for defending a fee application.” In re ASARCO, L.L.C., 751 F.3d 291, 301 (2014) (internal quotation marks omitted). It observed that § 330(a)(1) provides “that professional services are compensable only if they are likely to benefit a debtor’s estate or are necessary to case administration.” Id., at 299. Because “[t]he primary beneficiary of a professional fee application, of course, is the professional,” compensation for litigation defending that application does not fall within § 330(a)(1). Ibid.
We granted certiorari, 573 U.S. -, 135 S.Ct. 44, 189 L.Ed.2d 897 (2014), and now affirm.
*2164 II
A
“Our basic point of reference when considering the award of attorney’s fees is the bedrock principle known as the. American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise.” Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 252-253, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010) (internal quotation marks omitted). The American Rule has roots in our common law reaching back to at least the 18th century, see Arcambel v. Wiseman, 3 Dall. 306, 1 L.Ed. 613 (1796), and “[statutes which invade the common law are to be read with a presumption favoring the retention of long-established and familiar [legal] principles,” Fogerty v. Fantasy, Inc., 510 U.S. 517, 534, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994) (internal quotation marks and ellipsis omitted). We consequently will not deviate from the American Rule “ ‘absent explicit statutory authority.’ ” Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources, 532 U.S. 598, 602, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) (quoting Key Tronic Corp. v. United States, 511 U.S. 809, 814, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994)).
We have recognized departures from the American Rule only in “specific and explicit provisions for the allowance of attorneys’ fees under selected -statutes.” Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 260, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Although these “[statutory changes to [the American Rule] take various forms,” Hardt, supra, at 253, 130 S.Ct. 2149 they tend to authorize the award of “a reasonable attorney’s fee,” “fees,” or “litigation costs,” and usually refer to a “prevailing party” in the context of an adversarial “action,” see, e.g., 28 U.S.C. § 2412(d)(1)(A); 42 U.S.C. §§ 1988(b), 2000e-5(k); see generally Hardt, supra, at 253, and nn. 3-7, 130 S.Ct. 2149 (collecting examples).
The attorney’s fees provision of the Equal Access to Justice Act offers a good example of the clarity we have required to deviate from the American Rule. See 28 U.S.C. § 2412(d)(1)(A). That section provides that “a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action (other than cases sounding in tort) ... brought by or against the United States” under certain conditions. Ibid. As our decision in Commissioner v. Jean, 496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990), reveals, there could be little dispute that this provision&emdash;which mentions “fees,” a “prevailing party,” and a “civil action”&emdash;is a “fee-shifting statutfe]” that trumps the American Rule, id., at 161, 110 S.Ct. 2316.
B
Congress did not expressly depart from the American Rule to permit compensation for fee-defense litigation by professionals hired to assist trustees in bankruptcy proceedings. Section 327(a) authorizes the employment of such professionals, providing that a “trustee, with the court’s approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist [him] in carrying out [his] duties.” In other words, § 327(a) professionals are hired to serve the administrator of the estate for the benefit of the estate.
Section 330(a)(1) in turn authorizes compensation for these professionals as follows:
*2165 “After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103&emdash;
“(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and
“(B) reimbursement for actual, necessary expenses.” (Emphasis added.)
This text cannot displace the American Rule with respect to fee-defense litigation. To be sure, the phrase “reasonable compensation for actual, necessary services rendered” permits courts to award fees to attorneys for work done to assist the administrator of the estate, as the Bankruptcy Court did here when it ordered ASAR-CO to pay roughly $120 million for the firms’ work in the bankruptcy proceeding. No one disputes that § 330(a)(1) authorizes an award of attorney’s fees for that kind of work. See Alyeska Pipeline, supra, at 260, and n. 33, 95 S.Ct. 1612 (listing § 330(a)(l)’s predecessor as an example of a provision authorizing attorney’s fees). But the phrase “reasonable compensation for actual, necessary services rendered” neither specifically nor explicitly authorizes courts to shift the costs of adversarial litigation from one side to the other&emdash;in this case, from the attorneys seeking fees to the administrator of the estate&emdash;as most statutes that displace the American Rule do.
Instead, § 330(a)(1) provides compensation for all § 327(a) professionals&emdash;whether accountant, attorney, or auctioneer&emdash;for all manner of work done in service of the estate administrator. More specifically, § 330(a)(1) allows “reasonable compensation” only for “actual, necessary services rendered.” (Emphasis added.) That qualification is significant. The word “services” ordinarily refers to “labor performed for another.” Webster’s New International Dictionary 2288 (def. 4) (2d ed. 1934); see also Black’s Law Dictionary 1607 (3d ed. 1933) (“duty or labor to be rendered by one person to another”); Oxford English Dictionary 517 (def. 19) (1933) (“action of serving, helping or benefiting; conduct tending to the welfare or advantage of another”).[2] Thus, in a case addressing § 330(a)’s predecessor, this Court concluded that the phrase “ ‘reasonable compensation for services rendered’ necessarily implies loyal and disinterested service in the interest of’ a client. Woods v. City Nat. Bank & Trust Co. of Chicago, 312 U.S. 262, 268, 61 S.Ct. 493, 85 L.Ed. 820 (1941); accord, American United Mut. Life Ins. Co. v. Avon Park, 311 U.S. 138, 147, 61 S.Ct. 157, 85 L.Ed. 91 (1940). Time spent litigating a fee application against the administrator of a bankruptcy estate cannot be fairly described as “labor performed for”&emdash;let alone “disinterested service to”&emdash;that administrator.
This legislative decision to limit “compensation” to “services rendered” is particularly telling given that other provisions of the Bankruptcy Code expressly transfer the costs of litigation from one adversarial party to the other. Section 110(i), for instance, provides that “[i]f a bankruptcy petition preparer ... commits any act that the court finds to be fraudulent, unfair, or *2166 deceptive, on the motion of the debtor, trustee, United States trustee (or the bankruptcy administrator, if any),” the bankruptcy court must “order the bankruptcy petition preparer to pay the debtor ... reasonable attorneys’ fees and costs in moving for damages under this subsection.” § 110(i)(l)(C). Had Congress wished to shift the burdens of fee-defense litigation under § 330(a)(1) in a similar manner, it easily could have done so. We accordingly refuse “to invade the legislature’s province by redistributing litigation costs” here. Alyeska Pipeline, 421 U.S., at 271, 95 S.Ct. 1612.
Ill
The law firms, the United States as amicus curiae, and the dissent resist this straightforward interpretation of the statute. The law firms and the Government each offer a theory for why § 330(a)(1) expressly overrides the American Rule in the context of litigation in defense of a fee application, and the dissent embraces the latter. Neither theory is persuasive.
A
We begin with the law firms’ approach. According to the firms, fee-defense litigation is part of the “services rendered” to the estate administrator under § 330(a)(1). See Brief for Petitioners 23-30. As explained above, that reading is untenable. The term “services” in this provision cannot be read to encompass adversarial fee-defense litigation. See Part II-B, supra. Even the dissent agrees on this point. See post, at 2169 (opinion of BREYER, J.).
Indeed, reading “services” in this manner could end up compensating attorneys for the unsuccessful defense of a fee application.. The firms insist that “estates do benefit from fee defenses” — and thus receive a “service” under § 330(a)(1) — because “the estate has an interest in obtaining a just determination of the amount it should pay its professionals.” Brief for Petitioners 25-26 (internal quotation marks omitted). But that alleged interest — and hence the supposed provision of a “service” — exists whether or not a § 327(a) professional prevails in his fee dispute. We decline to adopt a reading of § 330(a)(1) that would allow courts to pay professionals for arguing for fees they were found never to have been entitled to in the first place. Such a result would not only require an unnatural interpretation of the term “services rendered,” but a particularly unusual deviation from the American Rule as well, as “[m]ost fee-shifting provisions permit a court to award attorney’s fees only to a ‘prevailing party,’ ” a “ ‘substantially prevailing’ party,” or “a ‘successful’ litigant,” Hardt, 560 U.S., at 253, 130 S.Ct. 2149 (footnote omitted). There is no indication that Congress departed from the American Rule in § 330(a)(1) with respect to fee-defense litigation, let alone that it did so in such an unusual manner.
B
The Government’s theory, embraced by the dissent, fares no better. Although the United States agrees that “the defense of a fee application does not itself qualify as an independently compensable service,” it nonetheless contends that “compensation for such work is properly viewed as part of the compensation for the underlying services in the bankruptcy proceeding.” Brief for United States as Amicus Curiae 25. According to the Government, if an attorney is not repaid for his time spent successfully litigating fees, his compensation for his actual “services rendered” to the estate administrator in the underlying proceeding will be diluted. Id., at 18. The United States thus urges us to treat fees for fee-defense work “as a component *2167 of ‘reasonable compensation.’ ” Id., at 33; accord, post, at 2169 (BREYER, J., dissenting). We refuse to do so for several reasons.
1
First and foremost, the Government’s theory cannot be reconciled with the relevant text. Section 330(a)(1) does not authorize courts to award “reasonable compensation” simpliciter, but “reasonable compensation for actual, necessary services rendered by” the § 327(a) professional. § 330(a)(1)(A) (emphasis added). Here, the contested award was tied to the firms’ work on the fee-defense litigation and is correctly understood only as compensation for that work. The Government and the dissent properly concede that litigation in defense of a fee application is not a “service” within the meaning of § 330(a)(1); it follows that the contested award was not “compensation” for a “service.” Thus, the only way to reach their reading of the statute would be to excise the phrase “for actual, necessary services rendered” from the statute.[3]
Contrary to the Government’s assertion, § 330(a)(6) does not presuppose that courts are free to award compensation based on work that does not qualify as a service to the estate administrator. That provision specifies that “[a]ny- compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application.” The Government argues that because time spent preparing a fee application is compensable, time spent defending it must be too. But the provision cuts the other way. A § 327(a) professional’s preparation of a fee application is best understood as a “servic[e] rendered” to the estate administrator under § 330(a)(1), whereas a professional’s defense of that application is not. By way of analogy, it would be natural to describe a car mechanic’s preparation of an itemized bill as part of his “services” to the customer because it allows a customer to understand — and, if necessary, dispute — his expenses. But it would be less natural to describe a subsequent court battle over the bill as part of the “services rendered” to the customer.
The Government used to understand that time spent preparing a fee application was different from time spent defending one for the purposes of § 330(a)(1). Just a few years ago, the U.S. Trustee explained that “[r]easonable charges for preparing ... fee applications ... are compensable ... because the preparation of a fee application is not required for lawyers practicing in areas other than bankruptcy as a condition to getting paid.” 78 Fed.Reg. 36250 (2013) (emphasis deleted). By contrast, “time spent ... defending ... fee applications” is ordinarily “not compensa-ble,” the Trustee observed, as such time can be “properly characterized as work that is for the benefit of the professional and not the estate.” Ibid.
To support its broader interpretation of § 330(a)(6), the Government, echoed by the dissent, relies on our remark in Jean that “[w]e find no textual or logical argument for treating so differently a party’s preparation of a fee application and its ensuing efforts to support that same application.” 496 U.S., at 162, 110 S.Ct. 2316; see post, at 2172 - 2173. But that use of Jean begs the question. Jean addressed a statutory provision that everyone agreed authorized court-awarded fees for fee-defense litigation. 496 U.S., at 162, 110 S.Ct. 2316. The “only dispute” in that context *2168 was over what “finding [was] necessary to support such an award.” Ibid. In resolving that issue, the Court declined to treat fee-application and fee-litigation work differently given that the relevant statutory text — “a court shall award to a prevailing party ... fees and other expenses ... incurred by that party in any civil action” — could not support such a distinction. Id., at 158, 110 S.Ct. 2316. Here, by contrast, the operative language — “reasonable compensation for actual, necessary services rendered” — reaches only the fee-application work. The fact that the provision at issue in Jean “did not mention fee-defense work,” post, at 2172, is thus irrelevant.
In' any event, the Government’s textual foothold for its argument is too insubstan-. tial to support a deviation from the American Rule. The open-ended phrase “reasonable compensation,” standing alone, is not the sort of “specific and explicit provision]” that Congress must provide in order to. alter this default rule. Alyeska Pipeline, 421 U.S., at 260, 95 S.Ct. 1612.
2
Ultimately, the Government’s theory rests on a flawed and irrelevant policy argument. The United States contends that awarding fees for fee-defense litigation is a “judicial exception” necessary to the proper functioning of the Bankruptcy Code. Brief for United States as Amicus Curiae 15, n. 7 (internal quotation marks omitted). Absent this exception, it warns, fee-defense litigation will dilute attorney’s fees and result in bankruptcy lawyers receiving less compensation than nonbank-ruptcy lawyers, thereby undermining the congressional aim of ensuring that talented attorneys will take on bankruptcy work. Accord, post, at 2170 - 2171.
As an initial matter, we find this policy argument unconvincing. In our legal system, no attorneys, regardless of whether they practice in bankruptcy, are entitled to receive fees for fee-defense litigation absent express statutory authorization. Requiring bankruptcy attorneys to pay for the defense of their fees thus will not result in any disparity between bankruptcy and nonbankruptcy lawyers.[4]
The United States nonetheless contends that uncompensated fee litigation in bankruptcy will be particularly costly because multiple parties in interest may object to fee applications, whereas nonbankruptcy fee litigation typically involves just a lawyer and his client. But this argument rests on unsupported predictions of how the statutory scheme will operate in practice, and the Government’s conduct in this case reveals the perils associated with relying on such prognostications to interpret statutes: The United States took the opposite view below, asserting that “requiring a professional to bear the normal litigation costs of litigating a contested request for payment ... dilutes a bankruptcy fee award no more than any litigation over professional fees.” Reply Brief for Appellant United States Trustee in No. 11-290 (SD Tex.), p. 15. The speed with which the Government has changed its tune offers a good argument against substituting policy-oriented predictions for statutory text.
*2169 More importantly, we would lack the authority to rewrite the statute even if we believed that uncompensated fee litigation would fall particularly hard on the bankruptcy bar. “Our unwillingness to soften the import of Congress’ chosen words even if we believe the words lead to a harsh outcome is longstanding,” and that is no less true in bankruptcy than it is elsewhere. Lamie v. United States Trustee, 540 U.S. 526, 538, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004). Whether or not the Government’s theory is desirable as a matter of policy, Gongress has not granted us “roving authority ... to allow counsel fees ... whenever [we] might deem them warranted.” Alyeska Pipeline, supra, at 260, 95 S.Ct. 1612. Our job is to follow the text even if doing so will supposedly “undercut a basic objective of the statute,” post, at 2170. Section 330(a)(1) itself does not authorize the award of fees for defending a fee application, and that is the end of the matter.
* * *
As we long ago observed, “The general practice of the United States is in opposition” to forcing one side to pay the other’s attorney’s fees, and “even if that practice [is] not strictly correct in principle, it is entitled to the respect of the court, till it is changed, or modified, by statute.” Arcambel, 3 Dali., at 306 (emphasis deleted). We follow that approach today. Because § 330(a)(1) does not explicitly override the American Rule with respect to fee-defense litigation, it does not permit bankruptcy courts to award compensation for such litigation. We therefore affirm the judgment of the Court of Appeals.

It is so ordered.

. Although § 327(a) directly applies only to trustees, § 1107(a) gives Chapter 11 debtors in possession the same authority as trustees to retain § 327(a) professionals. For the sake of simplicity, we refer to § 327(a) alone throughout this opinion.

. Congress added the phrase "reasonable compensation for the services rendered” to federal bankruptcy law in 1934. Act of June 7, 1934, § 77B(c)(9), 48 Stat. 917. We look to the ordinary meaning of those words at that time.

. The dissent’s focus on reasonable compensation is therefore a red herring. See post, at 2171-2172. The question is not whether an award for fee-defense work would be "reasonable,” but whether such work is compensable in the first place.

. To the extent the United States harbors any concern about the possibility of frivolous objections to fee applications, we note that "Federal Rule of Bankruptcy Procedure 9011 — bankruptcy’s analogue to Civil Rule 11 — authorizes the court to impose sanctions for bad-faith litigation conduct, which may include ‘an order directing payment ... of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.’ ” Law v. Siegel, 571 U.S. -, -, 134 S.Ct. 1188, 1198, 188 L.Ed.2d 146 (2014).