IKUTA, Circuit Judge,
dissenting:
I prefer the result reached by the majority, which reads 11 U.S.C. § 362(k) as if it were a typical attorneys’ fees provision that-shifts the fees incurred in bringing the damages action to a prevailing plaintiff. Because courts are familiar with this sort of fee shifting statute, such a reading makes it simpler for bankruptcy courts and district courts to apply § 362(k). But the ordinary tools of statutory interpretation compel me to conclude that this interpretation is not the best reading of the statutory text. Because bur job is to do our best to interpret the statute as Congress wrote it, we should adhere to the better reading set forth in Sternberg v. Johnston, 595 F.3d 937 (9th Cir.2010).
“The starting point in discerning congressional intent is the existing statutory text.” Lamie v. U.S. Trustee, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004). The statutory text here states, “[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys’ fees, and, in appropriate circumstances, may recover punitive damages.” 11 U.S.C. § 362(k)(1). As we acknowledged in Sternberg, the term “actual damages” is ambiguous. 595 F.3d at 947. It might refer to all of the costs resulting from a violation of the stay, including the fees incurred in bringing the damages action. Maj. Op. at 1099-1100. But it is reasonable to interpret “actual damages” as including only the fees incurred in correcting the automatic stay violation, and not the fees incurred in bringing the lawsuit itself, because “actual *1103 damages” are “[a]n amount awarded ... to compensate for a proven injury or loss; damages that repay actual losses.” Id. (alterations in original) (quoting Black’s Law DictionaRY 416 (8th ed.2004)). And “[o]nce the violation has ended, any fees the debtor incurs after that point in pursuit of a damage award would not be to compensate” the debtor for a violation of the stay. Id.
As explained in Sternberg, a number of states have adopted a similar approach to cases in which attorneys’ fees are part of the damages incurred from tortious conduct. Id. at 946. In suits to recover attorneys’ fees for malpractice, or to obtain the benefits due under an insurance policy, state courts have allowed the plaintiff to recover only the damages the plaintiff actually incurred from the underlying tort, but not the attorneys’ fees incurred to bring the action for damages. Id. Indeed, the majority acknowledges that the phrase “shall recover actual damages,” standing alone, is best read as conveying “Congress’ intent to adhere to the default rule precluding an award of attorney’s fees incurred in prosecuting the damages action itself.” Maj. Op. at 1099.
When the language of a statute is ambiguous, canons of statutory interpretation are useful rules of thumb to help courts, determine the meaning of legislation. See Conn. Nat. Bank v. Germain, 503 U.S. 249, 253, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). The most relevant canon here is that “Congress legislates against the backdrop of the ‘American Rule.’ ” Sternberg, 595 F.3d at 945-46 (citing Fogerty v. Fantasy, Inc., 510 U.S. 517, 533, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994)). In other words, statutes regarding attorneys’ fees should be read with a presumption in favor of the American Rule, except when a statutory purpose to the contrary is evident. See Fogerty, 510 U.S. at 534, 114 S.Ct. 1023. This principle supports the conclusion that Congress did not intend to allow the debtor to recover the fees incurred in the action itself. Indeed, as the majority acknowledges, when Congress intends to abrogate the American Rule, it typically uses different language. Maj. Op. at 1099. Most statutes that deviate from the American Rule do not provide a cause of action for “actual damages, including costs and attorneys’ fees,” but instead authorize the award of “a reasonable attorney’s fee” to a “prevailing party.” Maj. Op. at 1099. Thus, Congress knows how to include language abrogating the American Rule, and it chose different language for § 362(k). See Baker Botts L.L.P. v. ASARCO LLC, — U.S. —, 135 S.Ct. 2158, 2164, 192 L.Ed.2d 208 (2015) (“Although ... statutory changes to the American Rule take various forms, they tend to authorize the award of ‘a reasonable attorney’s fee,’ ‘fees,’ or ‘litigation costs,’ and usually refer to a ‘prevailing party’ in the context of an adversarial ‘action.’” (citations and internal quotation marks omitted)); id. at 2166 (“Had Congress wished to shift the burdens of ... litigation under [the statute at issue], it easily could have done so. We accordingly refuse to invade the legislature’s province by redistributing litigation costs here.” (internal quotation marks omitted)).
In reaching the opposite conclusion, the majority does not apply these ordinary principles of statutory construction. Except for making the conclusory statement that the “explicit language of § 362(k)” is unambiguous, Maj. Op. at 1099-1100, the majority does not analyze the text or apply standard principles of statutory construction at all. Instead, the majority jumps immediately to the statute’s historical context, its legislative history, and policy, but none of these sources are particularly helpful here.
*1104 No doubt the historical context of a statute can help a court interpret an otherwise ambiguous term. See D.C. v. Heller, 554 U.S. 570, 605, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008) (“[T]he examination of a variety of legal and other sources to determine the public understanding of a legal text in the period after its enactment ... is a critical tool of ... interpretation.” (emphasis omitted)). As the majority explains, at the time Congress enacted § 362(k), courts relied on their civil contempt powers to impose sanctions on creditors who wilfully violated the automatic stay, and those sanctions sometimes included an award of attorneys’ fees the debtor incurred in the contempt proceeding. Maj. Op. at 1099-1100. Relying on this history, the majority says that Congress “appears to have intended” § 362(k) to eliminate any doubt about the court’s authority to remedy violations of the automatic stay, Maj. Op. at 1098-99, 1099-1100, and perhaps it did. But perhaps not: Rather than codifying the court’s civil contempt powers to award attorneys’ fees, which Congress is capable of doing, see, e.g., In re Pace, 67 F.3d 187, 193 (9th Cir.1995) (finding that 11 U.S.C. § 105 authorizes bankruptcy courts to award costs and attorneys’ fees through civil contempt sanctions), Congress enacted an entirely different scheme, which gives debtors a cause of action to recover damages caused by a stay violation. Unlike civil contempt sanctions, actual damages under § 362(k) are mandatory, and the bankruptcy court has the discretion to award punitive damages. As the majority notes, § 362(k) “strengthened the remedies previously available to debtors injured by willful stay violations” rather than merely codify historical practice. Maj. Op at 1099. In other words, Congress decided to enact something entirely different from past practice, so the past practice does not shed light on what Congress meant by the words “actual damages, including costs and attorneys’ fees.”
Turning to legislative history, the majority acknowledges that there is none, so it proposes some of its own. Maj. Op. at 1100-01. It speculates that Congress’ purpose must have been to protect debtors: After all, the automatic stay prevents creditors from collecting from a debtor who has declared bankruptcy, and interpreting § 362(k) to include the fees incurred in the damages action provides extra deterrent to prevent creditors from violating the stay. Maj. Op. at 1100-01. The majority’s interpretation also empowers the debtor to sue to recover the damages, because in some cases the damages will be too small to justify the expense of litigation. Maj. Op. at 1100-01. It is possible that Congress had those purposes in mind, but because there is no evidence of those purposes, they do not support the majority’s interpretation. See Baker Botts, 135 S.Ct. at 2169 (“Whether or not [awarding fees] is desirable as a matter of policy, Congress has not granted us roving authority to allow counsel fees whenever we might deem them warranted. Our job is to follow the text even if doing so will supposedly undercut a basic objective of the statute.” (citations and internal quotation marks omitted)). In any event,- even without awarding fees incurred in the damages action, the action itself deters creditors from violating the stay, and it is possible that Congress did not want to encourage costly litigation for relatively minor violations or violations that were not clearly willful. While it is true that depriving the debtor of the attorneys’ fees incurred in bringing the damages action fails to make the debtor whole, that is the ordinary result of the American Rule.
Finally, the majority turns toward the difficulties that have resulted from Stern-berg’s reading of § 362(k). Maj. Op. at 1100-01. Here, I am in complete sympathy. The interpretation provided by *1105 Sternberg is difficult to apply, and has puzzled bankruptcy courts and district courts alike. In addition, the Sternberg interpretation is counterintuitive; courts are used to fee-shifting provisions that shift fees incurred in bringing the damages action, as well as fees incurred as part of the damages. I am not aware, however, of any canon that guides us to select an interpretation of a statute based on the ease or difficulty of administering it, and the majority does not rely on one. The majority states only that we try to avoid construing statutes in a way that will “multiply litigation,” Maj. Op. at 1100, but the majority’s interpretation might do just that by creating an extra incentive to bring an action under § 362(k). Thus, the practical effects of interpreting § 362(k) one way or the other also do not evince Congress’s intent to abrogate the American Rule.
Although I understand the impulse to improve Congress’s legislative efforts, our role is a modest one, and we should simply do our best to give effect to the plain language of the text. Congress is always free to correct our interpretation. Therefore, I reluctantly dissent.