Liam O'Grady, United States District Judge
This matter comes before the Court on Plaintiff's Motion for Attorney's Fees (Dkt. 139) and Bill of Costs (Dkt. 138). The motion for attorney's fees is fully briefed and the Court heard oral argument on April 6, 2018. For the reasons below and for good cause shown, the motion for attorney's fees is GRANTED. The Court awards Plaintiff attorney's fees of $336,034.32, nontaxable costs of $29,871.12, and taxable costs of $17,143.58.
I. Background
Following a seven day trial, a jury returned a verdict in favor of Plaintiff Patricia *911 Burke, finding that Ms. Burke's employer, the Defense Security Service (DSS), subjected her to a retaliatory hostile work environment in violation of Title VII and the Rehabilitation Act after she filed a formal complaint of gender discrimination. She was awarded $1 in damages. Evidence presented at trial included testimony that William Stephens, a manager at DSS supervising Ms. Burke, directly retaliated against Ms. Burke; that Mr. Stephens discussed with another DSS manager a tactic of isolating and harming the self-esteem of employees who file complaints; that Mr. Stephens previously retaliated against DSS employees using those tactics; that DSS managers interfered with the Equal Employment Opportunity (EEO) Office investigation into Ms. Burke's complaints; and that the EEO Office was aligned under the DSS Director's Chief of Staff instead of immediately under the Director. Accordingly, Plaintiff sought and the Court granted injunctive relief. The granted relief was designed to broadly address apparent deficiencies in DSS's EEO program as well as to specifically ensure that Ms. Burke could no longer be subject to retaliation under the supervision of the same individuals who retaliated against her in the first place.
Plaintiff has now moved for an award of attorney's fees of $406,085.28, nontaxable costs of $33,182.08, and taxable costs of $18,508.97.
II. Legal Standard
Under the American Rule, a prevailing litigant is generally not entitled to recover attorney's fees from the non-prevailing litigant unless a statute or contract provides otherwise. Baker Botts L.L.P. v. ASARCO LLC , --- U.S. ----, 135 S.Ct. 2158, 2164, 192 L.Ed.2d 208 (2015). The Court has discretion to award attorney's fees in successful Title VII cases. 42 U.S.C. § 2000e-5(k). If a party is entitled to recover attorney's fees, to calculate the award the Court "must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." Robinson v. Equifax Info. Servs., LLC , 560 F.3d 235, 243 (4th Cir. 2009). In determining the reasonable number of hours and a reasonable rate, the court may consider the twelve factors set out in Johnson v. Georgia Highway Express Inc. :
(1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.
488 F.2d 714, 717-19 (5th Cir. 1974). Although each of the twelve factors carries persuasive weight, "[t]he Court need not address all twelve ... factors independently" because they are each ultimately "subsumed" into the evaluation of what represents a reasonable rate and number of hours expended. Smith v. Loudoun Cty. Pub. Sch. , 2017 WL 176510 at *2 (E.D. Va. Jan. 17, 2017) (quoting Wells Fargo Bank, Nat. Ass'n v. Walls , 2013 WL 869902 at *2 (E.D. Va. Mar. 4, 2013), aff'd sub nom , 543 Fed.Appx. 350 (4th Cir. 2013) ). There is "a strong presumption that the lodestar represents the reasonable fee." City of Burlington v. Dague , 505 U.S. 557, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) (internal quotation marks omitted). After the *912 lodestar figure is calculated, "the court must subtract fees for hours spent on unsuccessful claims unrelated to successful ones." McAfee v. Boczar , 738 F.3d 81, 88 (4th Cir. 2013). Finally, the court "award[s] some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." Id.
III. Discussion
This memorandum sets forth Plaintiff's entitlement to the requested fees, the reasonableness of those fees, and Plaintiff's entitlement to costs.
A. Entitlement to Fees
This case was brought under Title VII of the Civil Rights Act of 1964 and the Rehabilitation Act of 1973. As noted, the Court has discretion to award attorney's fees in successful Title VII cases. 42 U.S.C. § 2000e-5(k). As a threshold matter, the parties debate whether attorney's fees are appropriate where the jury awarded only nominal damages. Defendant notes, "[i]f the prevailing party has recovered only nominal damages, the Supreme Court has explained that 'the only reasonable fee is usually no fee at all.' " Mercer v. Duke Univ. , 401 F.3d 199, 204 (4th Cir. 2005) (quoting Farrar v. Hobby , 506 U.S. 103, 115, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) ). To be sure, "the awarding of nominal damages ... highlights the plaintiff's failure to prove actual compensable injury." Farrar , 506 U.S. at 115, 113 S.Ct. 566. However, as Justice O'Connor noted in her concurrence, Farrar should apply where a plaintiff "has obtained only a Pyrrhic victory for which the reasonable fee is zero." Id. at 117, 113 S.Ct. 566. However, not "all nominal damages awards are de minimis. Nominal relief does not necessarily a nominal victory make." Id. at 121, 113 S.Ct. 566. Courts must consider the extent of relief, significance of the legal issue on which the plaintiff prevailed, and the public purpose served. Id. at 204.
Properly assessing the extent of the relief obtained requires comparing the amount of the damages sought to the amount awarded. Mercer , 401 F.3d at 204. Defendant seeks to emphasize the Mercer court's focus on damages and cabins its argument to focus on the extent to which Ms. Burke sought compensatory damages compared to how much the jury awarded. However, nothing in Mercer suggests that the Fourth Circuit had any intention to remove injunctive relief from the Farrar analysis; the facts in Mercer simply did not involve injunctive relief. Here, the Court fashioned significant injunctive relief complementing the nominal damages award. Accordingly, this factor favors an award of attorney's fees.
As to the significance of the legal issues, the Court agrees with Defendant that this case was not novel, did not establish important precedent, or otherwise advance the law. See Pitrolo v. Cnty. of Buncombe, N.C. , 589 Fed.Appx. 619, 630 (4th Cir. 2014). The legal issues here were straightforward and the case largely turned on facts and the credibility of witnesses. But again, the injunctive relief granted in this case was unique, shaped to address an exceptional and disturbing set of facts that demonstrated a tolerance for unlawful conduct in the highest ranks of the DSS, even after the jury returned its verdict in this case. While Ms. Burke's victory at trial was in many ways Pyrrhic, DSS seemed to treat it as a nullity, taking literally no action to ensure that the unlawful conduct ceased following the verdict. These facts demonstrate that the litigation served a significant public purpose, establishing that a federal agency with significant national security responsibilities had a systemic problem abiding by its basic obligations under federal civil rights laws, even after the jury returned its verdict. The Court assumed that the verdict alone would be sufficient to deter similar misconduct *913 in the future. Yet after the verdict, Ms. Burke continued to experience a retaliatory work environment.
Defendant falls back on an argument that "courts may consider a plaintiff's refusal of a settlement offer as one of several proportionality factors guiding their exercise of discretion." Sheppard v. Riverview Nursing Ctr., Inc. , 88 F.3d 1332, 1337 (4th Cir. 1996). Again, Defendant focuses heavily on monetary offers during the settlement negotiations to reach the conclusion that "because Plaintiff ultimately received only nominal damages from the jury, her refusal of Defendant's substantial settlement offers " 'promotes few public interests.' " Dkt. 148, at 10 (quoting Pitrolo , 589 Fed.Appx. at 631 ). The Court has reviewed the settlement offers and counteroffers between the parties and can only conclude that Plaintiff's offers of settlement, all of which included requests that align with the significant equitable relief granted in this case, more accurately reflect the totality of relief ultimately awarded in this case. This is particularly true in light of the low dollar amounts offered by Defendant that were inclusive of fees, now awarded here.
For these reasons, Plaintiff is entitled to an award of attorney's fees.
B. Lodestar Calculation
The Court determines the lodestar figure by calculating the reasonable hourly rates and the reasonable number of hours expended. Robinson , 560 F.3d at 243. The reasonable rate is calculated according to the prevailing market rates in the relevant community factoring in any required special skill or experience. Virginia-Pilot Media Companies, LLC v. Dep't of Justice , 2016 WL 4265742, at *4 (E.D. Va. Aug. 10, 2016).
Plaintiff contends that all of the requested rates are within the Vienna Metro Matrix which has been adopted by courts in this district as a reasonable indication of appropriate rates for Northern Virginia. See Vienna Metro LLC v. Pulte Home Corp. , No. 1:10-cv-00502 (E.D. Va. Aug. 24, 2011); see also Tech Sys., Inc. v. Pyles , 2013 WL 4033650, at *6 (E.D. Va. Aug. 6, 2013) (accepting Vienna Metro Matrix as indicator of reasonable rate in determining an award of attorney's fees). While Defendant contends that the Vienna Metro Matrix is not applicable to this case, the Court finds otherwise. This was a complex case in which a government employee sought to prove a retaliatory work environment where she had not been demoted or terminated. Plaintiff essentially had to demonstrate retaliation through the totality of the circumstances, requiring numerous lines of attack. Additionally undermining Defendant's argument on this point is the fact that, at trial, Defendant was represented by four attorneys[1] with the resources of the Department of Justice linebacking. Accordingly, the Vienna Metro Matrix is applicable to this case.
Defendant also contends that the Laffey Matrix is inapplicable to litigation in this District and that the requested rate for Plaintiff's attorney Mr. Goldsmith of $563 is unreasonable. The Court agrees that the Vienna Metro Matrix, not the Laffey Matrix, is the appropriate matrix for determining reasonable rates. See Am. Bird Conservancy v. U.S. Fish & Wildlife Serv. , 110 F.Supp.3d 655, 673 (E.D. Va. 2015). While the $563 rate requested for Mr. Goldsmith may be appropriate under the applicable Vienna Metro Matrix, several factors suggest a reduced rate. First, Mr. Goldsmith was not the lead counsel in the case, implicating the third and eleventh Johnson factors. Second, this Court does not recall ever awarding a lodestar rate of *914 $563, even for more complex cases, implicating the twelfth Johnson factor. For these reasons, the Court finds that a rate of $450 is appropriate for Mr. Goldsmith. Accordingly, Mr. Goldsmith's attorney's fee, before reductions to be discussed infra , is $107,811, covering 233.1 hours of non-travel services and 14.4 hours of travel services billed at a 55% discount.
Defendant's next line of attack on Ms. Burke's requested rates is on the declarations submitted by area practitioners, taking a piecemeal approach to arguing each declaration is insufficient. However, the declarations, in their totality, establish exactly what they need to establish for purposes of the Court's analysis: that the rates of Ms. Burke's attorneys are appropriate to this case. See Rum Creek Coal Sales v. Caperton , 31 F.3d 169, 175 (4th Cir. 1994).
For these reasons, the Court finds that the following rates for Ms. Burke's attorneys are reasonable and commensurate with their respective legal experience: $375-385 per hour for Jacob Small, $370 per hour for Benjamin Inman,[2] and $450 per hour for Leizer Goldsmith.
2. Reasonableness of Time Entries
"The next step in the lodestar analysis is to examine plaintiff's fee petition to determine the appropriate number of attorney hours to multiply by the hourly rates." Am. Bird Conservancy , 110 F.Supp.3d at 674-75. Defendant raises several overall objections to line items in the fee petition-first, that numerous items contain "block billing;" second, that numerous items contain vague descriptions; third, that the fee petition contains excessive or duplicative work; fourth, that the petition bills for clerical and paralegal work performed by attorneys; and fifth, that the petition bills travel time at a full hourly rate. Defendant noted these objections by highlighter color on an exhibit to its response. See Dkt. 140, Ex. 1. In response to these objections, Plaintiff has conceded several line items and withdrawn $9,274.70 in requests, including voluntary reductions of 55% in travel time compensation requested. See Dkt. 152, Ex. 19. The Court has reviewed the remaining disputed items and finds that each item is sufficiently and distinctly explained to enable the Court to adequately conduct a reasonableness analysis. The Court finds these remaining disputed services fees to be reasonable.
3. Applying Reductions to the Lodestar Figure
Plaintiff has volunteered several reductions to the lodestar figure. First, because the damages award was only nominal, Plaintiff voluntarily cut approximately 70% from line items associated with securing compensatory damages, resulting in a monetary reduction of $9,966.76. Second, she applied a 10% reduction to the remaining fees, resulting in a monetary reduction of $42,413.19.[3] Adjusting this 10% across-the-board reduction to the new fee figure, in light of the withdrawn line items and Mr. Goldsmith's awarded rate, Plaintiff's total requested fee award is $373,371. While these reductions are significant and while, as noted supra , the award of injunctive relief substantially alters the Farrar analysis, the Court nonetheless finds that a further reduction of 10% is warranted to fully account for the nominal damages award.
Plaintiff has also requested nontaxable costs be awarded, consisting of $32,550 in expert fees associated with Dr. Liza Gold, $459.08 in nontaxable costs pertaining to *915 Mr. Goldsmith, and $173 in nontaxable costs pertaining to Mr. Inman and Mr. Small.
By notice, Plaintiff concedes that $3,150 of the costs associated with Dr. Gold were improperly included. Dkt. 154. Defendant contends that the remaining untaxable costs pertaining to Dr. Gold should be further reduced by 70% because, Defendant contends, Dr. Gold's testimony pertained to compensatory damages. As noted from the bench, the Court finds further reduction of these costs unwarranted. The Court, however, does find certain costs associated with Mr. Goldsmith to be unreasonable. Specifically $31.70 for "express lane tolls for attending court" on a date not associated with any hearing in this case, $12.00 for "Parking for meeting with Small at Tysons," and $117.26 associated with lunch during trial will not be awarded.[4]
Accordingly, Plaintiff is awarded attorney's fees of $336,034.32 and nontaxable costs of $29,871.12.
C. Taxable Costs
Pursuant to FED. R. CIV. P. 54(d)(1), Plaintiff is entitled to recover for costs incurred in the litigation. Recoverable costs include court fees, court-reporter fees and transcripts "necessarily obtained for use in the case, fees for printing and witnesses, fees for exemplification and copying "necessarily obtained for use" in the case, docket fees, and fees for court-appointed experts. 28 U.S.C. § 1920.
Plaintiff has submitted a bill of costs totaling $18,508.97. Dkt. 138. Upon review of Defendant's objections, Plaintiff withdrew requests totaling $1,107.08. Of the remaining $17,401.89, Defendant objects to unclear costs associated with depositions of five witnesses, delivery fees associated with deposition transcripts, trial exhibit binders, deposition transcripts for use at trial, and miscellaneous photocopying for trial documents. The Court has reviewed the objections as well as Plaintiff's response to the objections clarifying the requests.
The Court finds the $2,887.75 associated with deposition transcripts to be adequately explained and taxable as transcript services. The delivery fees of $183 for the transcripts are taxable under Eastern District of Virginia Guidelines. With regard to the costs associated with trial exhibit binders, the Court finds the organization costs taxable-they are integral costs to producing usable exhibit binders-but the production of a fifth exhibit binder not taxable. Local Rules require four exhibit binders-two for the Court, one for defense counsel, and one for the witness box. Plaintiff has submitted costs for five copies, which includes one for Plaintiff's counsel's own use. This is not taxable. Ford v. Zalco Realty, Inc. , 708 F.Supp.2d 558, 563 (E.D. Va. 2010). Accordingly, the Court will not award $214.11 in costs associated with the fifth exhibit binder (one fifth of the remaining trial exhibit costs).
The costs associated with bringing deposition transcripts to trial are reasonable and taxable, in light of Plaintiff's clarification that she has only requested costs for two copies of each transcript. Finally, the Court finds that Plaintiff has insufficiently explained the $44.20 associated with Mr. Goldsmith printing approximately 442 pages of materials for use at trial. Defendant objected to the cost as vague and Plaintiff did not offer any clarification in her response to the objection.
For these reasons, Plaintiff is entitled to taxable costs of $17,143.58.
*916 IV. Conclusion
For the reasons discussed above and for good cause shown, Plaintiff's motion is GRANTED . Plaintiff is entitled to attorney's fees of $336,034.32, nontaxable costs of $29,871.12, and taxable costs of $17,143.58.
It is so ORDERED .

Three Assistant United States Attorneys, including the Chief of the Civil Division in this District, and one attorney from DSS's General Counsel's Office.

The Court fully credits Mr. Inman's approximately five years as an Assistant Commonwealth's Attorney as relevant to trying federal civil cases.

Adjusted for Mr. Goldsmith's awarded lodestar rate of $450 per hour.

Plaintiff did not dispute Defendant's objections to these costs in her reply.